### The PEOPLE of the State Of Colorado, Complainant,

v.

### Gregory A. MILLER, Respondent.

### Nos. 99PDJ095, 00PDJ029.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Aug. 8, 2001.

Opinion by Presiding Disciplinary Judge ROGER L. KEITHLEY and Hearing Board members, DOUGLAS D. PIERSEL and THOMAS J. OVERTON, both members of the bar.

## REPORT, DECISION AND IMPOSITION OF SANCTION

*SANCTION IMPOSED:* **ATTORNEY DIS-BARRED**

A sanctions hearing pursuant to C.R.C.P. 251.15(b) was held on July 20, 2000, in this consolidated matter[1] before the Presiding Disciplinary Judge ("PDJ") and two hearing board members, Douglas D. Piersel and Thomas J. Overton, both members of the bar. James S. Sudler, Assistant Attorney Regulation Counsel represented the People of the State of Colorado (the "People"). Gregory A. Miller ("Miller"), the respondent, did not appear either in person or by counsel.

The People's exhibits 1 through 4 were offered and admitted into evidence. The PDJ and Hearing Board considered the exhibits, the argument of the People, the facts deemed admitted by the entry of default, and made the following findings of fact which were established by clear and convincing evidence.

### I. FINDINGS OF FACT

Miller has taken and subscribed the oath of admission, was admitted to the bar of the Colorado Supreme Court on February 6, 1997, and is registered upon the official records of the Court, attorney registration number 27851. Miller is subject to the jurisdic-

---

1. On May 19, 2000, the PDJ granted the People's motion and consolidated case no. 99PDJ095 and case no. 00PDJ029.

tion of this court pursuant to C.R.C.P. 251.1(b).

The Complaint in Case No. 99PDJ095 was filed on January 21, 2000.[2] Miller failed to file an Answer, and default entered against him on April 19, 2000. The factual allegations set forth in the Complaint were deemed admitted and the charges deemed established by the entry of default. *See* Complaint attached hereto as exhibit 1.

The Complaint in Case No. 00PDJ029 was filed on March 23, 2000. The Complaint and Citation were served on Miller by certified mail on March 23, 2000. On March 27, 2000 Miller refused to accept the envelope containing the Citation and Complaint. He failed to file an Answer, and default entered against him on June 8, 2000. The PDJ granted default on the factual allegations set forth in the Complaint, which were deemed admitted, and default was granted in part and denied in part on the alleged charges. By Order dated July 5, 2000, upon the People's motion, the PDJ dismissed those charges upon which default had not been granted in Case No. 99PDJ029.[3] See Complaint attached hereto as exhibit 2. By the entry of default, the facts set forth in the two Complaints constitute the findings of fact upon which the conclusions of law are based.

## II. CONCLUSIONS OF LAW

### Case No. 99PDJ095

The allegations in Case No. 99PDJ095 arise from Miller's representation of Carol Carey and her brother, Doyle Gibson, in a dispute with their siblings over their parents' care and a dispute regarding their wills. Carey paid Miller $4,000 to represent Carey and Gibson. Carey's parents filed suit against Gibson and Miller filed an Answer. Thereafter, Miller failed to act with reasonable diligence and promptness in representing the clients and neglected the clients' matter: he failed to engage in any formal discovery, failed to obtain information or an attorney ad litem which Carey had requested, failed to advise the clients of the trial date, failed to issue subpoenas for witnesses, failed to prepare for trial, and failed to request a continuance until three days before trial. Miller failed to keep the client reasonably informed about the status of the matter by failing to advise the clients of the trial date, and failed to provide competent representation to the clients by advising them that the court would grant a continuance if Carey and her brother failed to appear for trial despite the fact that Carey had been subpoenaed without providing advice regarding the possible consequences which could arise from such conduct. Miller engaged in conduct involving dishonesty, fraud, deceit or misrepresentation by stating to the clients that he had requested information and the appointment of an attorney ad litem when he had not done so, and by advising Carey that he and opposing counsel had agreed to appoint another sibling as the individual responsible for their parents' care and finances when in fact he had not.

Carey terminated the attorney/client relationship and requested an accounting and a return of her unearned funds. Thereafter, Miller failed to take steps to protect his

2. On September 10, 1999, a Petition for Immediate Suspension was filed based on substantially the same factual basis as the Colo. RPC 1.16(d) and Colo. RPC 8.4(c) claims advanced in the Complaint. Miller was immediately suspended from the practice of law on October 28, 1999. On October 10, 1999, Miller filed an Answer to the Show Cause Order issued in response to the Petition for Immediate Suspension in which Miller stated "the above named Respondent hereby submits and relinquishes his license to practice law to the Colorado Board of Law Examiners and hereby requests that such license be cancelled." Colorado law does not permit an attorney licensed to practice law to relinquish or surrender a license while disciplinary charges are pending. C.R.C.P. 227(A)(8).

3. The following charges were dismissed: count one, Colo. RPC 1.1; counts three, four and five in their entirety; count six, Colo. RPC 1.16(d) and Colo. RPC 8.4(c); count eight, Colo. RPC 1.3, Colo. RPC 1.4(a), Colo. RPC 1.16(d)(two separate allegations) and Colo. RPC 8.4(c); count nine, Colo. RPC 1.3 (as to abandonment), Colo. RPC 1.4(a), Colo. RPC 1.16(d) and Colo. RPC 8.4(c); count eleven in its entirety; count twelve, Colo. RPC 1.4(a)(as to abandonment), and Colo. RPC 1.16(d); count thirteen in its entirety; count fourteen, Colo. RPC 1.4(a)(as to abandonment) and Colo. RPC 1.16(d).

clients' interests. He failed to surrender papers and property to which the clients were entitled and failed to refund that portion of the advance payment that had not been earned. Although Miller provided an accounting to his clients, the accounting he provided reflected only time expended prior to June 26, 1998, disclosed an available balance of $266.94 from Carey's initial $1,500 payment and did not address the additional $2,500 Carey paid on August 3, 1998, prior to the preparation of the accounting. Between June 26, 1998, the date reflected in the accounting, and August 20, 1998, the date Carey terminated Miller's representation, Miller did not perform sufficient professional services to earn the remaining $2,766.94 of Carey's funds he held. Consequently, Miller engaged in conduct involving dishonesty, deceit, fraud and misrepresentation by knowingly converting funds belonging to his client. Because Miller prepared the June 26, 1998 accounting and was aware that the services he provided between June 26, 1998 and August 20, 1998, the date of his termination, were insufficient to consume the client funds in his possession, his failure to timely refund those funds constitutes knowing conversion.

Subsequent to Carey's complaint to the Office of Attorney Regulation Counsel, Miller turned over the Carey file but thereafter knowingly failed to respond without good cause to requests for information by the Office of Attorney Regulation Counsel.

The entry of default established the following violations of The Colorado Rules of Professional Conduct ("Colo.RPC"): count one, Colo. RPC 1.3(a lawyer shall not neglect a legal matter entrusted to the lawyer), Colo. RPC 1.4(a)(a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information), and Colo. RPC 8.4(c)(a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation); count two, Colo. RPC 1.1 (a lawyer shall provide competent representation to a client) and Colo. RPC 1.4(b)(a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation); count three Colo. RPC 1.16(d)(upon termination of representation, a lawyer shall surrender papers and property to which the client is entitled), Colo. RPC 8.4(c)(a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation), Colo. RPC 1.15(b)(upon receiving funds or other property in which a client or third person has an interest, a lawyer shall deliver to the client any funds or property that the client is entitled and upon request, render a full accounting); and count four, Colo. RPC 8.1(b)(knowingly failing to respond reasonably to a lawful demand for information from a disciplinary authority) constituting grounds for discipline pursuant to C.R.C.P. 251.5(d).

### CASE NO. 00PDJ029

Case No. 00PDJ029 involved Miller's representation of seven clients: Laura Fredrickson (counts one and two); Iley Pullen (count six); Kelly Fullerton (counts seven and eight); Philip J. Catalfamo (count nine); Sandra Pelton–Cox (count ten); Craig Lebow (count twelve), and Sara and Gilbert Lucero (count fourteen). Additionally, count fifteen alleges that Miller failed to cooperate with the Office of Attorney Regulation Counsel in the investigation of this disciplinary matter.

In the Fredrickson matter (counts one and two), Miller neglected a client's legal matter by agreeing to represent Laura Fredrickson to probate her husband's estate, and after filing the initial paperwork with the probate court, failing to correct errors in the paperwork, and failing to take any further action on Fredrickson's case. Miller failed to keep Fredrickson reasonably informed about the status of the matter and promptly comply with the client's reasonable requests for information by failing to return Fredrickson's phone calls for an extended period. Miller engaged in conduct involving dishonesty, fraud, deceit or misrepresentation by telling Fredrickson that he had contacted all the creditors of the estate, that he had supplied them with death certificates, and that the case was progressing and was almost completed, when none of these statements were true. Miller's conduct violated Colo. RPC 1.3 (lawyer shall act with reasonable diligence and promptness in representing a

client and shall not neglect the client's legal matter), Colo. RPC 1.4(a)(a lawyer shall keep a client reasonably informed about the status of the matter and promptly comply with reasonably requests for information), and Colo. RPC 8.4(c)(it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation).

In the Pullen matter (count six), Iley Pullen hired Miller to probate his mother's estate and paid Miller $1,500 as a retainer. Thereafter, Pullen was unable to contact Miller. Pullen terminated Miller's services and requested that Miller return his documents, account for Pullen's funds and refund any unused portion of those funds. Although Miller sent Pullen some documents, he failed to provide a letter of explanation without which the documents were rendered useless to Pullen. Miller did not provide Pullen with an accounting or a refund of his funds. Miller's conduct violated Colo. RPC 1.15(b)(a lawyer shall promptly deliver to the client any funds or other property that the client is entitled to receive and upon request by the client render a full accounting regarding such property).

In the Fullerton Matter (count seven and eight), Kelly Fullerton hired Miller to represent him in a contract dispute and paid him $500. Miller failed to keep the client reasonably informed about the status of the matter by failing to provide Fullerton with a copy of the Complaint he filed on his behalf, failing to advise the client about his inability to serve the defendants, and by failing to contact Fullerton for a five-month period despite the client's repeated attempts to reach him. Fullerton terminated Miller's services and requested an accounting and refund of any unused portion of the funds. Miller failed to promptly deliver to Fullerton any remaining funds and failed to render a full accounting. Miller's conduct violated Colo. RPC 1.4(a)(a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information) and Colo. RPC 1.15(b)(a lawyer shall promptly deliver to the client any funds or other property that the client is entitled to receive and upon request by the client render a full accounting regarding such property).

In the Catalfamo Matter (count nine), Philip J. Catalfamo paid Miller $750 to prepare estate planning documents, including a trust. Catalfamo provided the relevant information to Miller in order to fund the trust, and Miller was to notify certain financial institutions that the trust had been established. Miller failed to do so and at one point stated that he had lost the file. He asked the client for additional information, received the information, and still did not provide notice to the financial institutions so that the trust could be funded. Miller failed to act with reasonable diligence and promptness in representing Catalfamo. Miller's conduct violated Colo. RPC 1.3(a lawyer shall act with reasonable diligence and promptness in representing a client and shall not neglect the client's legal matter).

In the Pelton–Cox Matter (count ten), Sandra Pelton–Cox hired Miller to file a civil suit involving real estate fraud and deceptive trade practices and paid Miller $500 as a retainer. Miller was aware at the time he was retained that the statute of limitations would soon run on the client's claims. Shortly after the statute of limitations deadline had passed, Pelton–Cox called Miller to determine whether a Complaint had been filed and he assured her it had been when in fact he had not filed a Complaint on her behalf. Thereafter, Miller failed to keep Pelton–Cox reasonably informed about the status of the matter by failing to communicate with the client despite her repeated attempts to contact Miller. Eventually Miller's telephone was disconnected. Pelton–Cox heard nothing further from Miller. Miller's conduct violated Colo. RPC 1.3(a lawyer shall act with reasonable diligence and promptness in representing a client and shall not neglect the client's legal matter) and Colo. RPC 1.4(a)(a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information).

During a critical time period, Miller was required to accomplish specific professional tasks for the client, he failed to accomplish those tasks, and he failed to communicate

with the client. Moreover, Miller knowingly deceived his client regarding his actions on her behalf. The totality of Miller's misconduct establishes that Miller deserted, rejected and/or relinquished the professional responsibilities owed to his client and thereby abandoned her. Having abandoned his client and thereby having terminated the attorney/client relationship, Miller failed to take steps to the extent reasonably practicable to protect a client's interests, including surrendering papers and property to which the client was entitled and refunding any advance payment of fee in violation of Colo. RPC 1.16(d)(upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, including surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned).

■ In the Lebow Matter (count twelve), Craig Lebow hired Miller to probate the estate of his father, and paid Miller $2,500 as a retainer. Miller filed the initial paperwork appointing Lebow as personal representative. Although thereafter there was some communication between Miller and Lebow, Miller did not keep the client reasonably informed about the status of the matter. Lebow made repeated attempts to contact Miller without success. Eventually, Lebow discovered that Miller's telephone had been disconnected. Miller's conduct violated Colo. RPC 1.3(a lawyer shall act with reasonable diligence and promptness in representing a client) and Colo. RPC 1.4(a)(a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information). Miller's misconduct does not, however, rise to the level of neglect justifying a conclusion that Miller abandoned the client. The totality of facts do not establish by clear and convincing evidence that Miller either deserted or rejected his professional responsibilities regarding his client. *Cf, People v. Carvell,* No. 99PDJ096 (Colo. PDJ September 11, 2000), 29 Colo. Law. 137 (November 2000), 2000 Colo. Discipl. LEXIS 26 (holding that to find abandonment rather than merely neglect, there must be proof that the attorney—during a given time period—was required to accomplish specific professional tasks for the client, failed to accomplish those tasks, and failed to communicate with the client and that the proof must objectively indicate that the attorney has deserted, rejected and/or relinquished the professional responsibilities owed to the client).

In the Lucero Matter (count fourteen), Sara and Gilbert Lucero hired Miller to provide them with family asset protection services and to transfer certain property to a trust. They paid him $1,950 for these services. The Luceros received a book of documents called the "family asset protection planning book," found mistakes in it, and repeatedly called Miller to find out when the corrected documents would be provided to them. Three months later, Miller met with them and promised to correct the documents, and agreed to transfer their real property to a living trust. He failed to correct the documents and failed to transfer the property. Thereafter, Miller failed to keep the clients reasonably informed about the status of the matter by failing to contact the Luceros for several months. Miller failed to act with reasonable diligence and promptness by failing to transfer the property to a trust and failing to prepare the documents the Luceros had requested. Miller's conduct violated Colo. RPC 1.3(a lawyer shall act with reasonable diligence and promptness in representing a client) and Colo. RPC 1.4(a)(a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information).

In count fifteen, Miller failed to respond without good cause shown to requests for information by the Office of Attorney Regulation Counsel and thus violated C.R.C.P. 251.5(d).

### III. SANCTION/IMPOSITION OF DISCIPLINE

The Supreme Court in *People v. Varallo,* 913 P.2d 1, 11 (Colo.1996), held:

Knowing misappropriation [for which the lawyer is almost invariably disbarred] "consists simply of a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing

that the client has not authorized the taking." *In re Noonan*, 102 N.J. 157, 160, 506 A.2d 722 (1986). Misappropriation includes "not only stealing, but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." *In re Wilson*, 81 N.J. 451, 455 n. 1, 409 A.2d 1153 (1979).

The PDJ and Hearing Board found that Miller's retention of Carey's funds in the amount of $2,766.94 for an extended period of time was knowing misconduct. *See People v. Elliott*, 99PDJ059, slip op. at 8 (consolidated with 99PDJ086) (Colo. PDJ March 1, 2000), 29 Colo. Law. 112, 114 (May 2000)(disbarring attorney for his accepting advance fees from two clients, performing some but not all of the services for which he was paid, retaining the fees for one year in one matter and two years in another matter, and abandoning the clients, *citing People v. Singer*, 897 P.2d 798, 801 (Colo.1995)(holding that extensive and prolonged neglect is considered willful misconduct)); *People v. Silvola*, 915 P.2d 1281, 1284 (Colo.1996)(finding that misconduct that occurred over an extended period of time must be deemed to be willful).

In the Pelton–Cox matter, the level of neglect demonstrated by Miller rises to the level of abandonment. Miller failed to communicate with his client for over a year, neglected their legal matters during a period when immediate action was required, allowed his telephone service to be terminated, and failed to inform his clients of his new telephone number. Abandonment was defined in *Carvell*, No. 99PDJ096 (Colo. PDJ September 11, 2000), 29 Colo. Law. 137 (November 2000), 2000 Colo. Discipl. LEXIS 26 as follows:

To find abandonment rather than merely neglect, there must be proof that the attorney—during a given time period—was required to accomplish specific professional tasks for the client, failed to accomplish those tasks, and failed to communicate with the client. The proof must objectively indicate that the attorney has deserted, rejected and/or relinquished the professional responsibilities owed to the client.

Colorado law provides that in the absence of substantial mitigating factors, disbarment is the presumed sanction when an attorney abandons his client in addition to misappropriating a client's funds. *See People v. Holmes*, 951 P.2d 477, 479 (Colo.1998)(disbarring attorney, in part, for misappropriating fees and abandoning clients); *People v. McDowell*, 942 P.2d 486, 492 (Colo.1997)(holding that disbarment was presumed sanction for knowingly misappropriation of funds); *People v. Townshend*, 933 P.2d 1327, 1329 (Colo.1997)(lawyer disbarred who effectively abandoned two clients after accepting retainers and failing to account for or return the unearned retainers); *People v. Steinman*, 930 P.2d 596, 599–600 (Colo.1997)(lawyer disbarred who accepted fees from clients and then abandoned them while keeping their money and causing serious harm); *People v. Gilbert*, 921 P.2d 48, (Colo.1996)(attorney disbarred for converting client funds in conjunction with abandonment of practice); *People v. Jenks*, 910 P.2d 688, 690 (Colo.1996)(attorney disbarred for accepting legal fees from a number of clients and then abandoning them, causing some of the clients substantial harm); *People v. Tucker*, 904 P.2d 1321, 1325 (Colo.1995)(lawyer disbarred who abandoned clients while continuing to collect attorney fees for work that would not be performed); *People v. Fritsche*, 897 P.2d 805, 806–807 (Colo.1995)(lawyer who effectively abandoned clients and disregarded disciplinary proceedings disbarred); *People v. Elliott*, No. 99PDJ059 (consolidated with 99PDJ086) slip op. at 8 (Colo. PDJ March 1, 2000); 29 Colo. Law. 112, 113 (May 2000) 2000 Colo. Discipl. LEXIS 40 (attorney disbarred for abandoning his clients and conversion of clients' funds); *People v. Righter*, 35 P.3d 159, 163 (Colo. PDJ 1999), 28 Colo. Law. 140, 141 (September, 1999)(attorney disbarred for, among other things, serious neglect of clients and conversion of client funds).

In six matters (Carey, Fredrickson, Catalfamo, Pelton–Cox, Lebow and Lucero), Miller neglected his clients' legal matters and failed to act with reasonable diligence and promptness in representing his clients. In

six matters (Carey, Fredrickson, Fullerton, Pelton–Cox, Lebow and Lucero), Miller failed to keep the clients reasonably informed about the status of their legal matters and failed to promptly comply with their reasonable requests for information. In two matters (Carey and Fredrickson), Miller engaged in dishonesty, deceit or misrepresentation by informing his clients he had taken action on their behalf when he had not. In three matters (Carey, Pullen, Fullerton), Miller failed to deliver to the client the funds or other property that the client was entitled to receive and render a full accounting regarding the property. In two matters (Carey and Pelton–Cox), Miller failed, upon termination of representation, to take reasonable steps to protect the client's interests, such as surrendering papers and property to which the client is entitled and refunding advance payment that has not been earned. In the Carey matter, Miller failed to provide competent representation to the client, and failed to explain the matter to the extent reasonably necessary to permit the client to make an informed decision.

The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") is the guiding authority for selecting the appropriate sanction to impose for lawyer misconduct. The ABA *Standards* are in accord with Colorado precedent that disbarment is warranted for the misconduct in this consolidated matter. Miller's knowing conversion in the Carey matter standing alone warrants disbarment under ABA *Standard* 5.11(b)(stating that "[d]isbarment is generally appropriate when . . . a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.")

The ABA *Standards* also provide that disbarment is warranted for abandonment of a practice and knowingly failing to perform services for a client and causing serious or potentially serious injury to a client. *See* ABA *Standard* 4.41 (a) (stating that "[d]isbarment is generally appropriate when a lawyer abandons [his] practice and causes serious or potentially serious injury to a client") and 4.41(b)(stating that disbarment is war-

ranted where "a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client"). In the Pelton–Cox matter, Miller abandoned his clients, failed to file a Complaint prior to the expiration of the statute of limitations and thereby caused serious injury to his client.

Moreover, under the ABA *Standards*, disbarment is the presumptive sanction where "a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to [his] clients." ABA *Standard* 4.41(c). The extent of Miller's neglect in six different matters, his failure to communicate in six matters, his knowing misrepresentations to clients in two cases, his failure to provide competent representation in one matter, and his retention of client funds or property after termination indicates a pattern of neglect with complete disregard for the welfare of his clients. *See e.g. People v. Murray*, 887 P.2d 1016, 1021 (Colo.1994)(lawyer disbarred for knowingly failing to perform services for clients in ten separate matters constituting a pattern of neglect and causing potentially serious harm to clients); *People v. Dulaney*, 785 P.2d 1302, 1306 (Colo.1990) (lawyer disbarred for chronic neglect of client matters and use of deceit to cover the neglect). Miller's misconduct in each of these matters either caused serious or potentially serious harm to his clients.

The PDJ and Hearing Board considered aggravating factors pursuant to ABA *Standards* 9.22. The People offered unrebutted evidence in aggravation that Miller: had a dishonest or selfish motive, *see id.* at 9.22(b); he engaged in a pattern of serious misconduct, *see id.* at 9.22(c); he committed multiple offenses, *see id.* at 9.22(d); he engaged in obstruction of the disciplinary proceeding by intentionally failing to comply with requests for information from the Office of Attorney Regulation Counsel, *see id.* at 9.22(e), he refused to acknowledge the wrongful nature of his conduct, *see id.* at 9.22(g), and was indifferent to making restitution, *see id.* at 9.22(j). Miller did not appear for the scheduled trial of this matter and no evidence of mitigation was presented; however; the People stated that Miller had no prior discipline

after February 1997, when Miller began practicing in Colorado, *see id.* at 9.32(a).

### *IV. ORDER*

It is therefore ORDERED:

1. GREGORY A. MILLER, attorney registration number 27851 is DISBARRED from the practice of law effective thirty-one days from the date of this Order and his name shall be stricken from the roll of attorneys authorized to practice law in the State of Colorado;

2. As a condition of readmission, Miller must establish that he has refunded and paid restitution, including interest at the statutory rate, from the date he received the funds, to the following individuals:

   A. Laura Fredrickson in the amount of $200;

   B. Iley Pullen in the amount of $1,500;

   C. Kelly Fullerton in the amount of $500;

   D. Philip J. Catalfamo in the amount of $750;

   E. Sandra Pelton–Cox in the amount of $500;

   F. Craig Lebow in the amount of $2,500;

   G. Sara and Gilbert Lucero in the amount of $1,950;

   H. Carol Carey in the amount of $ 2,766.94.

3. Miller must return the files of the clients giving rise to this consolidated proceeding within sixty (60) days of the date of this decision.

4. MILLER is Ordered to pay the costs of these proceedings; the People shall submit a Statement of Costs within ten (10) days of the date of this Order. Respondent shall have five (5) days thereafter to submit a response thereto.

### EXHIBIT 1

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.9 through 251.14, and it is alleged as follows:

The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on February 6, 1997, and is registered upon the official records of this court, registration No. 27851. He is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's registered business address is 481 Highway 105, Suite B–190, Monument, Colorado 80132. His alternate address is 2160 Northgate Road, Colorado Springs, Colorado 80921; however, all mail

### COUNT I

**(Neglect—Colo. RPC 1.3; Communication – 1.4(a); and Dishonesty, Fraud, Deceit or Misrepresentation—Colo. RPC 8.4(c))**

Carol Ms. Carey ("Ms.Carey"), the complaining witness, and her brother Doyle Gibson were involved in a dispute with their other siblings over the care of their elderly parents, Francis Marion Gibson and Willie Inez Gibson, and over property belonging to their parents.

In late February or early March, 1998, Ms. Carey hired respondent Miller to determine the validity of wills and powers of attorney signed by her parents at the request of another brother, Wilburn Gibson.

The new wills and powers of attorney executed by Francis and Willie Gibson took control of their affairs from Doyle Gibson and gave it to Wilburn Gibson.

On March 6, 1998, Ms. Carey gave respondent Miller a check for $1500 to retain his services.

On March 13, 1998, Francis and Willie Gibson sued Doyle Gibson.

On April 9, 1998, Doyle Gibson was served with the lawsuit filed by his parents.

On April 24, 1998, Ms. Carey and Doyle Gibson met with respondent Miller and provided him with their response to the allegations against Doyle Gibson set forth in the complaint filed by their parents.

During the April 24, 1998 meeting with respondent Miller, Ms. Carey and Doyle Gibson asked respondent Miller to perform a

number of legal services for them in addition to filing an answer on behalf of Doyle Gibson.

Respondent Miller filed an answer on behalf of Doyle Gibson.

After filing the answer, respondent Miller failed to engage in any formal discovery on his client's behalf.

In early June, 1998, Ms. Carey and Doyle Gibson asked respondent Miller to obtain additional information.

In response to his clients' request for additional information, respondent Miller represented to them that he had already submitted requests for some of it and would submit additional requests at the appropriate time. This representation was false and respondent Miller knew it was false at the time he made it.

Respondent Miller did not obtain any of the additional information sought by his clients.

Respondent Miller further represented to his clients that he had requested the appointment of an Attorney *Ad Litem*.

At no time did respondent Miller request the appointment of an Attorney *Ad Litem*. At the time respondent Miller made the representation about the Attorney *Ad Litem* to his client, he knew it was false.

During a hearing on June 2, 1998, the trial was scheduled for August 21, 1998.

Respondent Miller did not advise his clients of the trial date.

Ms. Carey and Doyle Gibson first learned of the trial date when Ms. Carey received a subpoena for trial from the plaintiffs.

Respondent Miller did not obtain/issue subpoenas for witnesses, prepare a defense for Doyle Gibson or otherwise prepare for trial.

When Ms. Carey voiced her concerns to respondent Miller, he promised to obtain a continuance of the trial date.

At respondent Miller's request, Ms. Carey paid him an additional $2,500 on August 3, 1998.

During an August 3, 1998 meeting with respondent Miller, he assured Ms. Carey there was no cause for alarm.

Respondent Miller did not request a continuance of the August 21, 1998 trial date until August 19, 1998 when he filed a motion to terminate trial date and to permit joinder of third party defendants.

Respondent Miller's failure to prepare any defense for Doyle Gibson is a violation of Colo. RPC 1.3.

Respondent Miller's failure to attempt to obtain a continuance of the trial in a timely fashion is a violation of Colo. RPC 1.3.

Respondent Miller's failure to engage in discovery is a violation of Colo. RPC 1.3.

Respondent Miller's failure to subpoena witnesses for trial is a violation of Colo. RPC 1.3.

Respondent Miller's failure to prepare for trial is a violation of Colo. RPC 1.3.

Respondent Miller's failure to advise his clients of the trial date is a violation of Colo. RPC 1.4(a).

Respondent Miller's representation to his client that he had requested the appointment of an Attorney *Ad Litem* and had requested information when he had not done so is a violation of Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### COUNT II

**(Competence–Colo. RPC 1.1 and Communication 1.4(a))**

Paragraphs 2 through 31 are incorporated herein by reference.

Respondent Miller advised Ms. Carey that if she and Doyle Gibson failed to appear for the trial on August 21, 1998, the court would automatically grant a continuance.

Respondent Miller did not advise Ms. Carey of the consequences of failing to appear for trial when under subpoena to do so.

Respondent Miller's advice to his clients that if they failed to appear at trial after having been subpoenaed to do so, they would

automatically obtain a continuance of the trial is a violation of Colo. RPC 1.1.

Respondent Miller's failure to advise his clients of the consequences of failing to appear for trial when under subpoena to do so is a violation of Colo. RPC 1.1 and 1.4(b).

WHEREFORE, the complainant prays at the conclusion hereof.

## COUNT III

**(Conversion of Client Funds – Colo. RPC 1.16(d); Failure to Account for Client Funds – Colo. RPC 1.15(b); and Dishonesty, Fraud, Deceit and Misrepresentation – Colo. RPC 8.4(c))**

Paragraphs 2 through 36 are incorporated herein by reference.

Throughout the course of the representation, Ms. Carey repeatedly requested from respondent Miller an accounting of the funds she had paid to him.

Respondent Miller did not provide Ms. Carey with an accounting until August 17, 1998.

The accounting provided to Ms. Carey was dated July 30, 1998 and showed that she had a credit balance of $266.94 from the initial $1500 payment she made on March 6, 1998.

The accounting provided to Ms. Carey did not reflect the $2500 payment she had made to respondent Miller on August 3, 1998.

On August 20, 1998, respondent Miller advised Ms. Carey that he and opposing counsel had agreed to appoint another brother, Jerry Lee Gibson, to assume control of their parents and their finances.

Respondent Miller had never discussed the agreement with his clients or obtained their permission to enter into such an agreement.

There had been no agreement between respondent Miller and opposing counsel concerning Jerry Lee Gibson.

During the August 20, 1998 meeting, respondent Miller again advised Ms. Carey that she could delay the trial by failing to appear.

Ms. Carey fired respondent Miller on August 20, 1998.

At the time he was fired, respondent Miller promised Ms. Carey that he would provide an updated statement detailing the services performed and accounting for the fees he had been paid.

Respondent Miller further agreed to return the remaining unused portion of the $4000 he had been paid.

Other than the July 30, 1998 statement, Respondent Miller did not provide any other accounting or return any unused portion of the monies Ms. Carey had paid to him.

By letters dated November 4, 1998 and November 20, 1998, Ms. Carey again requested an accounting of the $4000 and the return of her file.

Respondent Miller did not respond.

The professional time expended by respondent Miller between July 30, 1998, the date of the only accounting ever provided to Ms. Carey, and August 20, 1998, the date on which he was fired, was insufficient to consume the $2,766.94 of client funds advanced to cover attorney fees.

Respondent Miller knowingly converted $2,766.94 of client funds.

Respondent Miller never provided a complete accounting of the funds entrusted to him by Ms. Carey.

Respondent Miller never returned any unearned portion of the fees paid to him by Ms. Carey.

Respondent Miller did not provide the file to his client.

Respondent Miller's conversion of $2,766.94 of client funds is a violation of Colo. RPC 1.16(d) and 8.4(c).

Respondent Miller's failure to fully account for the funds entrusted to him is a violation of Colo. RPC 1.15(b).

Respondent Miller's representation to his clients that he had reached an agreement with opposing counsel when he had not is a violation of Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

## COUNT IV

### (Failure to Cooperate – Colo. 8.1(b) and C.R.C.P. 251.5(d))

Paragraphs 2 through 59 are incorporated herein by reference.

By letter dated March 30, 1999, and sent certified mail, return receipt requested, respondent Miller was requested by the Office of Attorney Regulation Counsel to provide a written response to the request for investigation filed by Ms. Carey.

Respondent Miller did not respond.

By letter dated April 21, 1998, respondent Miller was again requested by the Office of Attorney Regulation Counsel to respond to the Request for Investigation.

Respondent Miller did not respond in writing until May 2, 1999.

On April 27, 1999, respondent Miller met with a representative of the Office of Attorney Regulation Counsel.

At the April 27, 1999, meeting, respondent Miller provided a copy of Ms. Carey's file and promised to remit an accounting of the $4000.

Respondent Miller did not provide the accounting to Ms. Carey or to the Office of Attorney Regulation Counsel.

Respondent Miller failed to appear for an appointment with the Office of Attorney Regulation Counsel on August 16, 1999.

By letter dated September 17, 1999, respondent Miller was asked to produce to the Office of Attorney Regulation Counsel his trust and operating account records for the period March 1, 1998 through March 31, 1999.

Respondent Miller did not produce the requested records.

The September 17, 1999 letter to respondent Miller also requested his current physical location and a telephone number.

Respondent Miller has never provided a current physical address or telephone number.

Respondent Miller's failure to cooperate with the Office of Attorney Regulation Counsel in its investigation is a violation of Colo. RPC 8.1(b) and C.R.C.P. 251.5(d).

WHEREFORE, it is prayed that the respondent be found guilty of violations of various rules of conduct which establish grounds for discipline as provided in C.R.C.P. 251.5, and the Colorado Rules of Professional Conduct and that he be appropriately disciplined and assessed the costs of these proceedings.

LUAIN T. HENSEL, # 29757
Assistant Regulation Counsel
JOHN S. GLEASON, # 15011
Regulation Counsel
600 17th Street, Suite 200–South
Denver, Colorado 80202
Telephone: (303) 893–8121
Attorneys for Complainant

## EXHIBIT 2

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.9 through 251.14, and it is alleged as follows:

The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on February 6, 1997, and is registered upon the official records of this court, registration No. 27851. He is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's registered business address is 481 Highway 105, Suite B–190, Monument, Colorado 80132. His alternate address is 2160 Northgate Road, Colorado Springs, Colorado 80921; however, all mail sent to the alternate address has been returned.

### *Fredrickson Matter*

#### 98–02346

### COUNT I

### (Competence—Colo. RPC 1.1 and Neglect—Colo. RPC 1.3)

Laura Fredrickson's husband, Robert J. Sena, died on June 28, 1998. Ms. Fredrickson hired the respondent on July 7, 1998 to probate her husband's estate.

The initial paperwork filed by the respondent was incorrect. Although dated July 20, 1998, the defective paperwork was not filed until August 21, 1998. The respondent filed nothing else after that date.

On January 7, 1999, Ms. Fredrickson was advised by the Probate Court that the initial filing by the respondent was incorrect and that because the respondent had failed to correct it after being advised by them to do so, the probate could not proceed and was, therefore, in the initial stages.

Ms. Fredrickson was advised by the Probate Court that the respondent had filed documents for both formal and informal proceedings. The Probate Court further told Mrs. Fredrickson that they had advised the respondent he needed to correct the paperwork.

The filing of incorrect paperwork is a violation of Colo. RPC 1.1.

The respondent's failure to correct the defective paperwork after being advised to do so by the Probate Court is a violation of Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

### COUNT II

**(Failure to Communicate—Colo. RPC 1.4(a); Failure to Account for Client Funds—Colo. RPC 1.15(b); and Misrepresentation—Colo. RPC 8.4(c))**

Paragraphs 1 through 7 are incorporated herein.

In mid-July, 1998, the respondent told Ms. Fredrickson that he had contacted all of the creditors of the estate. This statement was false at the time he made it, and the respondent knew it was false.

Creditors of the estate continued to contact Ms. Fredrickson directly. The respondent continued to tell her he had mailed death certificates to all of the creditors of the estate. This statement was false at the time he made it, and the respondent knew it was false.

On August 17, 1998, Ms. Fredrickson asked for a billing statement which the respondent promised to mail. The respondent asked for and received $200 from Ms. Fredrickson on August 18, 1998.

Ms. Fredrickson met with the respondent at the end of August to determine the status of the case. The respondent told Ms. Fredrickson all was well. Ms. Fredrickson again asked for a statement of services rendered, and the respondent again promised to mail one.

Ms. Fredrickson was unable to contact the respondent from mid-September to mid-October, 1998 when she again asked for a statement. The respondent again promised to mail a statement.

Ms. Fredrickson made repeated efforts to contact the respondent from November, 1998 until January 6, 1999. The respondent called Ms. Fredrickson on January 7, 1999 and told her he had moved and was having problems with his telephone. The respondent also told Ms. Fredrickson that the probate of the estate was almost completed. The statement that the estate was almost completed was false at the time the respondent made it, and he knew it was false.

By letter dated March 8, 1999, Ms. Fredrickson again requested a statement for services rendered.

Ms. Fredrickson has not heard from the respondent since January 7, 1999, and has not received an accounting of the funds entrusted to him or a refund of the unused retainer, if any.

The respondent's failure to communicate with his client is a violation of Colo. RPC 1.4(a).

The respondent's repeated misrepresentations to Ms. Fredrickson that he had contacted the creditors of the estate when he had not; that he would furnish her with an accounting of the funds entrusted to him; and that the case was almost completed are a violation of Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

## COUNT III

(Abandonment – Colo. RPC 1.3 and Colo. RPC 1.4(a); Failure to Protect Client Interests – Colo. RPC 1.16(d); and Conversion of Client Property—Colo. RPC 1.16(d) and Colo. RPC 8.4(c))

Paragraphs 1 through 18 are incorporated herein.

By letter dated March 8, 1999, Ms. Fredrickson fired the respondent and asked that her file be forwarded to her new attorney along with a $1000 insurance check the respondent had received. Ms. Fredrickson again requested a statement for services rendered.

The respondent sent the $1000 insurance check to Ms. Fredrickson's new attorney but did not provide the file. Ms. Fredrickson has heard nothing further from the respondent since that time.

The respondent abandoned his client in violation of Colo. RPC 1.3, Colo. RPC 1.4(a).

The respondent's failure to protect his client's interests when he abandoned her case is a violation of Colo. RPC 1.16(d).

The respondent's failure to return the file to the client when requested to do so is conversion of client property and a violation of Colo. RPC 1.16(d) and Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### Bocim Matter

### 98–02351

### COUNT IV

(Competence—Colo. RPC 1.1 and Unreasonable Fees—Colo. RPC 1.5(a))

Paragraphs 1 through 24 are incorporated herein.

Juanita Bocim (the complaining witness herein) hired the respondent in January, 1998 for the purpose of asset protection planning for her mother, Georgia McWhirt, who was entering a nursing home. Ms. Bocim and her brother did not want the nursing home to have any claim on their mother's home. The respondent was paid a total of $1,500 by Ms. Bocim and her brother.

The respondent prepared a number of documents for Georgia McWhirt, including "The Georgia M. McWhirt Declaration of Revocable Inter Vivos Dynasty Trust" and an Affidavit of Trust. Ms. McWhirt's home was transferred into the trust. Ms. Bocim signed all documents on behalf of her mother utilizing a power of attorney.

The respondent assured Ms. Bocim that the documents he provided would permit her and her brother to do whatever they wanted with their mother's property.

Ms. Bocim contacted the respondent again in August, 1998 to handle the sale of her mother's home.

The attorney for the title company questioned the validity of the documents prepared for Georgia McWhirt by the respondent and advised that he believed a conservatorship should be established for Georgia McWhirt.

On September 1, 1998 the respondent petitioned the court for appointment of a conservator for Georgia McWhirt. Ms. Bocim ultimately became the conservator and was authorized to sell the house.

On December 18, 1998 the respondent filed a Motion to Ratify Living Trust stating that the title company associated with the sale of the house was requiring "a court order ratifying the existence and enforceability [sic] of said trust".

Notwithstanding the order permitting the sale of the home by the conservator, title to the house was held by the trust.

By order dated February 12, 1999, the court ruled that the living trust prepared by the respondent was invalid for a number of reasons. The court further ruled that the conveyance of the home into the trust was an invalid conveyance and set it aside. The court ordered the home to become a part of the conservatorship estate.

The respondent met with Ms. Bocim, her husband, her brother, and her sister-in-law on February 24, 1999 at which time the respondent admitted the asset protection planning he had provided had been worthless

and promised to repay the $1,500 when able to do so.

Ms. Bocim has heard nothing further from the respondent.

The respondent's fees were unreasonable since the services rendered for the living trust were useless.

The respondent never refunded the $1,500.

The respondent accepted fees for services that were of no value to his client in violation of Colo. RPC 1.5(a).

WHEREFORE, the complainant prays at the conclusion hereof.

### Pullen Matter

### 99–00238
### COUNT V

### (Neglect—Colo. RPC 1.3 and Failure to Communicate—Colo. RPC 1.4(a))

Paragraphs 1 through 39 are incorporated herein.

Iley Pullen's mother died on September 7, 1996. Mr. Pullen and his sister hired the respondent on November 2, 1998 to probate their mother's estate. Mr. Pullen's sister paid the respondent a $1,500 retainer.

The respondent told Mr. Pullen and his sister that it would take approximately one week to prepare the necessary paperwork.

When two weeks had passed, Mr. Pullen began trying to contact the respondent but was unable to do so.

Mr. Pullen terminated the respondent's services by letter dated December 7, 1998.

On December 18, 1998, the respondent sent Mr. Pullen a package of documents he had prepared but did not provide a cover letter or any instructions or explanation.

Between December, 1998 and April or May, 1999, Mr. Pullen tried to contact the respondent to determine what he was to do with the documents but was unable to do so.

The respondent neglected a legal matter entrusted to him in violation of Colo. RPC 1.3.

The respondent failed to communicate with his clients in violation of Colo. RPC 1.4(a).

The respondent abandoned his clients in violation of Colo. RPC 1.3 and 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

### COUNT VI

### (Failure to Account for Client Funds—Colo. RPC 1.15(b); and Conversion of Client Funds—Colo. RPC 1.16(d) and Colo. RPC 8.4(c))

Paragraphs 1 through 49 are incorporated herein.

By letter dated December 7, 1998, Mr. Pullen asked the respondent for an accounting of the funds that had been entrusted to him and requested a refund of the unused portion of the retainer.

The respondent did not and has not provided an accounting of the $1,500 retainer despite being asked to do so.

Although the respondent prepared some documents, he sent them to Mr. Pullen after his services were terminated and never provided any explanation. The documents were therefore useless to Mr. Pullen and his sister.

The respondent did not earn the $1,500 paid to him for attorney fees. The respondent has not returned any of the retainer after being asked to do so.

The respondent's failure to account for the funds entrusted to him is a violation of Colo. RPC 1.15(b).

The respondent converted client funds in violation of Colo. RPC 1.16(d) and Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### Fullerton Matter

### 99–00963
### COUNT VII

### (Failure to Communicate—Colo. RPC 1.4(a))

Paragraphs 1 through 56 are incorporated herein.

Kelly Fullerton (the complaining witness herein) hired the respondent on June 22, 1998 to represent him in a contract dispute. Mr. Fullerton paid the respondent $500.

The respondent filed a complaint on August 7, 1998 but never obtained service on the Canadian defendants. The respondent did not provide Mr. Fullerton with a copy of the complaint prior to filing the complaint as Mr. Fullerton had requested.

Between June 22, 1998 and October 19, 1998, Mr. Fullerton was unable to contact the respondent despite repeated efforts to do so.

The respondent's failure to communicate with his client is a violation of Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

### COUNT VIII

(Abandonment—Colo. RPC 1.3 and Colo. RPC 1.4(a); Failure to Account for Client Funds—Colo. RPC 1.15(b); Failure to Protect Client Interests – Colo. RPC 1.16(d); Conversion of Client Funds—Colo. RPC 1.16(d) and Colo. RPC 8.4(c))

Paragraphs 1 through 61 are incorporated herein.

In December, 1998, Mr. Fullerton fired the respondent and asked for a refund of the unused portion of the $500 entrusted to him.

The respondent has not supplied an accounting, refunded any portion of the $500 or otherwise communicated with Mr. Fullerton.

The respondent abandoned his client in violation of Colo. RPC 1.3 and Colo. RPC 1.4(a).

The respondent failed to account for the funds entrusted to him in violation of Colo. RPC 1.15(b).

The respondent failed to protect his client's interests when he abandoned his case in violation of Colo. RPC 1.16(d).

The respondent converted client funds in violation of Colo. RPC 1.16(d) and Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### Catalfamo Matter

#### 99–01038

### COUNT IX

(Neglect—Colo. RPC 1.3; Abandonment— Colo. RPC 1.3 and Colo. RPC 1.4(a); Failure to Protect Client Interests— Colo. RPC 1.16(d); and Misrepresentation—Colo. RPC 8.4(c))

Paragraphs 1 through 68 are incorporated herein.

Between April and October, 1998, the respondent prepared a number of estate planning documents for Philip J. Catalfamo (the complaining witness herein) and his family. One of the documents was a living trust.

Mr. Catalfamo had provided the respondent with the names of all financial institutions and account numbers so they could be notified that the trust had been established.

The respondent promised to provide Mr. Catalfamo with letters to the various financial institutions so that the trust could be funded.

Subsequent to July 16, 1998, the date on which the trust was signed, Mr. Catalfamo repeatedly asked the respondent for the letters. The respondent made various excuses and promised to provide them.

Mr. Catalfamo paid the respondent $750 on October 20, 1998.

By letter dated March 17, 1999, but postmarked April 2, 1999, the respondent asked Mr. Catalfamo to complete another intake form providing again personal and financial information because the file was missing. The respondent again promised to prepare the letters to fund the trust upon receipt of the information.

By letter dated April 8, 1999, Mr. Catalfamo advised the respondent that the form had not been included with the respondent's letter and asked that all correspondence be sent to his home address.

After Mr. Catalfamo filed a complaint with the Office of Attorney Regulation, the respondent wrote Mr. Catalfamo a letter dated

May 6, 1999, (received by Mr. Catalfamo on or about May 28, 1999) requesting more information and again promising to mail the letters to the financial institutions within one day of his receipt of the information from Mr. Catalfamo.

Mr. Catalfamo provided the requested information by letter dated June 1, 1999.

Mr. Catalfamo heard nothing further from the respondent until the respondent called him on August 29, 1999 and asked if Mr. Catalfamo had received the letters. When Mr. Catalfamo told him they had not been received, the respondent said he would prepare them again and personally deliver them. As of September 15, 1999, Mr. Catalfamo had heard nothing further from the respondent and had not received the letters.

The respondent's repeated promises to provide the letters to Mr. Catalfamo were false, and the respondent knew the promises were false when he made them.

The respondent never provided the letters to Mr. Catalfamo.

The respondent abandoned his client before concluding the work he was hired to perform in violation of Colo. RPC 1.3 and Colo. RPC 1.4(a).

The respondent failed to protect his clients' interests when he abandoned them in violation of Colo. RPC 1.16(d).

The respondent's repeated promises to provide additional documents and his failure to do so are a violation of Colo. RPC 1.3 and Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### Pelton–Cox Matter

#### 99–01848
#### COUNT X

(Neglect—Colo. RPC 1.3; Abandonment—Colo. RPC 1.3 and Colo. RPC 1.4(a); and Failure to Protect Client Interests—Colo. RPC 1.16(d))

Paragraphs 1 through 84 are incorporated herein.

Sandra Pelton–Cox (the complaining witness herein) hired the respondent on September 25, 1998 to file a civil suit for real estate fraud and/or deceptive trade practices. She paid him $500 as a retainer.

The respondent had received Ms. Pelton–Cox's file from an attorney in Texas one or two weeks before meeting with her.

The respondent was at all times aware that the complaint had to be filed on or before September 30, 1998 to preserve the statute of limitations.

Shortly after September 30, 1998, Ms. Pelton–Cox called the respondent to determine whether the complaint had been filed. The respondent assured her it had been and that she should receive paperwork in the near future. This statement was false at the time the respondent made it, and he knew it was false.

When she had not received any paperwork or heard from the respondent by the end of October, Ms. Pelton–Cox called the respondent who assured her that everything was taken care of. The respondent further advised Ms. Pelton–Cox that they would have to wait 30 to 60 days to receive an answer from the defendants. The respondent's statements were false at the time he made them, and he knew they were false.

On or about December 6, 1998, Ms. Pelton–Cox again contacted the respondent to determine whether the defendants had filed an answer to the complaint; the respondent told her there had been no response from any defendant and it would be necessary to file for default. The respondent's statement was false at the time he made it, and the respondent knew it was false.

Ms. Pelton–Cox continued to call the respondent between December, 1998 and into April, 1999 when the respondent's telephone was disconnected. Ms. Pelton–Cox has heard nothing further from the respondent since the December, 1998 telephone conversation.

In August 1999, Ms. Pelton–Cox contacted the court in El Paso County, the appropriate forum for the lawsuit, and determined that the respondent had never filed a complaint on her behalf.

The respondent failed to file his client's case before the statute of limitations ran in violation of Colo. RPC 1.3.

The respondent abandoned his client in violation of Colo. RPC 1.3 and Colo. RPC 1.4(a).

The respondent failed to protect his client's interests when he abandoned her case in violation of Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

## COUNT XI

**(Failure to Account for Client Funds— Colo. RPC 1.15(b); and Conversion— Colo. RPC 1.16(d) and—Colo. RPC 8.4(c))**

Paragraphs 1 through 96 are incorporated herein.

The respondent has not provided an accounting for the funds entrusted to him or refunded any portion of the funds.

The respondent has not returned complainant Pelton–Cox's file, which contains all of the evidence and documentation of her claims.

The respondent failed to account for the funds entrusted to him in violation of Colo. RPC 1.15(b).

The respondent converted client funds in violation of Colo. RPC 1.16(d) and Colo. RPC 8.4(c).

The respondent's failure to return the file to his client is conversion of client property in violation of Colo. RPC 1.16(d) and Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### Lebow Matter

### 99–02612

## COUNT XII

**(Abandonment—Colo. RPC 1.3 and Colo. RPC 1.4(a); Failure to Communicate—Colo. RPC 1.4(a); and Failure to Protect Client Interests – Colo. RPC 1.16(d))**

Paragraphs 1 through 102 are incorporated herein.

Craig Lebow (the complaining witness herein) hired the respondent on March 26, 1999 to probate his father's estate. Mr. Lebow paid the respondent $2500.

The respondent filed the initial paperwork, and Letters Testamentary issued on March 29, 1999 appointing Mr. Lebow as personal representative.

The respondent took no further action on the case and never published the requisite notice to creditors or contacted the decedent's accountant as he had promised Mr. Lebow he would. The respondent did prepare a letter to Mr. Lebow's stepmother which he e-mailed to Mr. Lebow, Mr. Lebow instructed him not to mail it.

Thereafter, Mr. Lebow repeatedly tried to contact the respondent but was unable to do so, and the respondent's telephone was ultimately disconnected.

The respondent has not contacted Mr. Lebow since his telephone was disconnected except to mail to Mr. Lebow the paperwork Mr. Lebow had initially given him. The respondent did not send a cover letter or any explanation for the return of the documents.

The respondent abandoned his client in violation of Colo. RPC 1.3 and Colo. RPC 1.4(a).

The respondent failed to communicate with his client in violation of Colo. RPC 1.4(a).

The respondent failed to protect his client's interests when he abandoned the case in violation of Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

## COUNT XIII

**(Failure to Account for Client Funds— Colo. RPC 1.15(b); and Conversion— Colo. RPC 1.16(d) and Colo. RPC 8.4(c))**

Paragraphs 1 through 111 are incorporated herein.

The respondent has neither provided an accounting of the funds entrusted to him nor returned any portion of the unused retainer.

The respondent failed to account for the funds entrusted to him in violation of Colo. RPC 1.15(b).

The respondent converted his client's funds contrary to Colo. RPC 1.16(d) and Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### Lucero Matter

### 99–02797

### COUNT XIV

**(Failure to Communicate—Colo. RPC 1.4(a); Abandonment—Colo. RPC 1.3 and Colo. RPC 1.4(a); and Failure to Protect Client Interests—Colo. RPC 1.16(d))**

Paragraphs 1 through 115 are incorporated herein.

On June 23, 1998, Sara C. Lucero (the complaining witness herein) and her husband Gilbert Lucero decided to hire the respondent for family asset protection. They paid the respondent $1,950 on June 24, 1998.

On July 15, 1998, Ms. Lucero received a "Family Asset Protection planning book". After reviewing the documents in the book, Ms. Lucero discovered that her Durable Power of Attorney for Medical Care had not been notarized but that Gilbert Lucero's Durable Power of Attorney for Medical Care had been notarized. Ms. Lucero and her husband also discovered other mistakes.

On July 23, 1998, Ms. Lucero and her husband met with Claude Ray Page, the respondent's non-lawyer assistant, and informed him of the mistakes and gave him corrected information.

Between August 24, 1998 and October 25, 1998, Ms. Lucero received a plethora of excuses from Mr. Page as to why her documents had not been corrected and returned.

On September 11, 1998, Ms. Lucero called the respondent's office and was told that Mr. Page was no longer employed there.

On October 26, 1998 Ms. Lucero spoke with the respondent's secretary who said she would tell the respondent that the corrected documents had not been received.

On November 24, 1998, the respondent visited Ms. Lucero and her husband at their home and removed additional pages from their Family Asset Protection planning book but did not provide corrected pages.

At the November 24, 1998 meeting with Ms. Lucero and her husband, the respondent promised to transfer their real property to their living trust not later than November 27, 1998. The property should have been transferred to the trust at the time it was created.

Between December 29, 1998 and February 19, 1999, Ms. Lucero tried many times to reach the respondent but was unable to do so.

By letter dated January 5, 1999, the respondent returned some but not all of the Lucero documents. Ms. Lucero has never received a notarized Durable Power of Attorney for Medical Care or been asked to execute a new one.

Ms. Lucero has not heard from Mr. Miller since his letter dated January 5, 1999.

The Luceros' property has not been transferred into the living trust.

The respondent abandoned his clients in violation of Colo. RPC 1.3 and Colo. RPC 1.4(a).

The respondent failed to communicate with his clients in violation of Colo. RPC 1.4(a).

The respondent failed to protect his clients' interests when he abandoned them in violation of Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

### COUNT XV

**(Failure to Cooperate – C.R.C.P. 251.5(d))**

Paragraphs 1 through 131 are incorporated herein.

The respondent has failed to cooperate with the Office of Attorney Regulation Counsel in its investigation of these matters, thereby hindering and delaying the investigations.

The respondent failed to keep an appointment on August 16, 1999 to discuss all pending matters. He called in the early morning hours of August 16 and said he was having an emergency and would call back later in the day to reschedule the meeting.

By letter dated August 16, 1999, the Office of Attorney Regulation Counsel requested that the respondent provide a current physical location and telephone number. Because the respondent had not filed a registration statement for 1999 with the Office of Attorney Registration, neither that office nor the Office of Attorney Regulation Counsel had a current physical location or telephone number for him.

The respondent has never contacted the Office of Attorney Regulation Counsel to reschedule the appointment or to provide the requested information.

By letter dated September 17, 1999, the respondent was asked to provide his trust and operating account records for the period March 1, 1998 through March 31, 1999. He has not responded.

The respondent has failed to cooperate with the Office of Attorney Regulation in violation of C.R.C.P. 251.5(d).

WHEREFORE, it is prayed that the respondent be found guilty of violations of various rules of conduct which establish grounds for discipline as provided in C.R.C.P. 251.5, and the Colorado Rules of Professional Conduct and that he be appropriately disciplined and assessed the costs of these proceedings.

LUAIN T. HENSEL, # 29757

Assistant Regulation Counsel

JOHN S. GLEASON, # 15011

Regulation Counsel

600 17th Street, Suite 200–South

Denver, Colorado 80202

Telephone: (303) 893–8121

Attorneys for Complainant