**The PEOPLE of the State of Colorado, Complainant,**

v.

**Robert A. CARVELL, Respondent.**

**No. 99PDJ096.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Sept. 11, 2000.

Opinion by Presiding Disciplinary Judge ROGER L. KEITHLEY and Hearing Board members, CORINNE MARTINEZ–CASIAS and HENRY C. FREY, both members of the bar.

### OPINION AND ORDER IMPOSING SANCTIONS

### SANCTION IMPOSED: ONE YEAR AND ONE DAY SUSPENSION

A sanctions hearing was held on March 8, 2000, before the Presiding Disciplinary Judge ("PDJ") and two hearing board members, Corinne Martinez–Casias and Henry C. Frey. James S. Sudler, Assistant Attorney Regulation Counsel represented the People of the State of Colorado (the "People"). The respondent Robert A. Carvell ("Carvell") failed to appear.

On September 17, 1999, the People filed the Complaint in this matter. The Citation and Complaint were served upon Carvell on September 20, 1999 by certified mail. Carvell personally signed for receipt of the papers. Carvell failed to answer the allegations in the Complaint and on December 23, 1999, default entered against him. The facts

set forth in the Complaint were deemed admitted. Default was granted as to the rule violations set forth in claims one, three and five, which were deemed confessed, and denied as to the rule violations set forth in claims two and four.

The People's exhibits 1 through 8 were offered and admitted into evidence. The PDJ and Hearing Board heard testimony from the People's witnesses Patrick Averill and Marjorie Averill, reviewed the facts established by the entry of default and the admitted exhibits, considered argument of the People, and made the following findings of fact which were established by clear and convincing evidence:

## I. FINDINGS OF FACT

Robert A. Carvell has taken and subscribed the oath of admission, was admitted to the bar of the Colorado Supreme Court on September 20, 1960, and is registered upon the official records as attorney registration number 03576. Carvell is subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b).

On March 6, 1998 Marjorie Averill and her son Patrick Averill ("Averill") met with Carvell concerning Patrick Averill's dissolution of marriage proceeding. Averill retained Carvell to represent him in that proceeding. Averill paid Carvell a retainer in the amount of $1,000. On April 21, 1998, Carvell entered his appearance in the dissolution of marriage action by filing a response to the petition for dissolution and a motion for temporary orders. Carvell set the temporary orders hearing and later attended that hearing on behalf of his client. A day or two after the hearing, Averill's mother went to Carvell's office and picked up copies of the pleadings. Thereafter, from late April, 1998 to August, 1998, Carvell did not communicate with Averill. Despite repeated attempts to contact him, Carvell returned none of the Averills' phone calls. On August 31, 1998, Marjorie Averill went to Carvell's office and discovered his office had moved. Carvell had not advised the Averills that he was changing office locations.

On September 16, 1998, Averill was finally successful in contacting Carvell by telephone. Carvell made an appointment with Averill at his new office location on September 17, 1998. Shortly thereafter, Carvell then cancelled the appointment and rescheduled it for September 22, 1998, which he also cancelled. Carvell rescheduled and subsequently cancelled other appointments for September 23 and 24, 1998. After September 24, 1998, Carvell did not schedule any further appointments.

A final orders hearing was held on October 1, 1998 and neither Carvell nor Averill appeared. Carvell never informed Averill of the final orders hearing date. At the final orders hearing, the court based its ruling and judgment regarding the parties' financial information solely on Averill's estranged wife's information. Although Averill had provided the necessary financial information to Carvell, Carvell had not filed the financial information with the court.

At the October 1, 1998 hearing, the court awarded Averill's wife sole custody of the couple's two minor children, spousal maintenance, child support, the couple's one operating vehicle, the marital home and furnishings, and one-half of Averill's pension. Additionally, Averill was ordered to pay the first and second mortgages on the marital home. Carvell failed to notify Averill of the final orders in the dissolution of marriage action. Averill has had no communication with or from Carvell since the series of appointment cancellations in September of 1998 prior to the final orders hearing. Averill learned that the final orders had entered on October 1, 1998 when a copy of the court order was attached to his door approximately three weeks later.

Averill obtained successor counsel to protect his interests. On October 30, 1998 successor counsel entered his appearance on behalf of Averill and attempted to have the court vacate the final orders based upon Carvell's neglect. The court denied the motion. Averill spent an additional $2,000 in an unsuccessful attempt to set aside the order of the court.

On December 15, 1998, the Office of Attorney Regulation Counsel sent Carvell a re-

quest for investigation regarding the charges in the Complaint. He never responded. Carvell has failed to participate in these proceedings.

## II. CONCLUSIONS OF LAW

The Complaint alleged that Carvell's conduct violated five separate provisions of The Colorado Rules of Professional Conduct ("Colo.RPC"): claim one alleged a violation of Colo. RPC 1.3 (a lawyer shall not neglect a legal matter entrusted to that lawyer); claim two alleged a violation of Colo. RPC 1.5(a) (a lawyer's fee shall be reasonable); claim three alleged a violation of Colo. RPC 1.4(a) (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information), and claim four alleged a violation of Colo. RPC 1.16(d) (upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests). Claim five alleged that Carvell's failure to respond without good cause shown to a request for investigation by Attorney Regulation Counsel constituted grounds for discipline pursuant to C.R.C.P. 251.5(d) [1] and its predecessor C.R.C.P. 241.6(7). The Order of Default entered on December 23, 1999, granted default on the factual allegations giving rise to each of the five claims, and found violations of Colo. RPC 1.3(claim one), Colo. RPC 1.4(a) (claim three) and C.R.C.P. 251.5(d)(claim five). The Order denied default on the alleged rule violations of Colo. RPC 1.5(a) (claim two) and Colo. RPC 1.16(d) (claim four).

Carvell entered into a formal attorney-client relationship with Averill, accepted $1,000 from Averill for Carvell's legal services, agreed to provide specific professional services, provided some but not all of the agreed upon services, failed to communicate with his client regarding the dissolution of marriage action, failed to appear at the final orders hearing and failed to advise the client of the hearing date. Final orders were entered in Averill's dissolution case without his knowledge and without Carvell being present to represent his interests.

■■■ When a lawyer enters into an attorney-client relationship with another, an obligation to perform the agreed-upon professional services arises. *People v. Hotle,* 35 P.3d 185, 188, (Colo.1999) 29 COLO. LAW. 107, 108 (January 2000). Carvell initially performed work for his client, but thereafter neglected his client's matter at a critical stage of the proceedings. He failed to provide his client's financial affidavit to the court, he failed to advise his client of the final orders hearing date, and he failed to appear at the final orders hearing in order to protect his client's interests. His neglect of Averill's matter constitutes a violation of Colo. RPC 1.3. His failure to keep appointments during a critical stage in the proceeding, and his general failure to communicate with his client over a five-month period despite his client's numerous attempts to contact him constitutes a violation of Colo. RPC 1.4(a).

In *Hotle,* the PDJ and Hearing Board stated:

> By agreeing to perform the requested services, the lawyer represents that he will provide the services in accordance with the Colorado Rules of Professional Conduct. If the attorney thereafter, absent either his client's permission or an appropriate withdrawal from the attorney-client relationship, fails to perform the agreed-upon professional services within a reasonable period of time, the attorney's misconduct constitutes neglect. Under circumstances where the period of neglect, in light of the professional services to be provided, is accompanied by a failure to communicate with the client, the neglectful misconduct may justify a finding of abandonment. *Id.*

■■■ To find abandonment rather than merely neglect, there must be proof that the attorney—during a given time period—was required to accomplish specific professional

1. C.R.C.P. 251.5(d) provides in relevant part: Misconduct by an attorney, individually or in concert with others, including the following acts or omissions, shall constitute grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship: (d) Failure to respond without good cause shown to a request by the ... Regulation Counsel.

tasks for the client, failed to accomplish those tasks, and failed to communicate with the client. The proof must objectively indicate that the attorney has deserted, rejected and/or relinquished the professional responsibilities owed to the client. In the present case, a finding of abandonment is warranted.

Following the temporary orders hearing, Carvell's representation of Averill required Carvell to assemble the client's financial information and file it with the court, adequately prepare his client's case for presentation to the court, meet with and/or discuss the case with his client, inform the client of the court's decision and advise the client of his options following the court's decision. Carvell failed to accomplish any of these minimal tasks. The level of Carvell's neglect combined with his failure to communicate with his client at a time when Carvell was required to perform substantial undertakings in order to protect his client rises to the level of abandonment.

█ The People allege that respondent violated Colo. RPC 1.5(a)(a lawyer's fee shall be reasonable) by charging an unreasonable fee for his representation of Averill. Respondent was paid $1,000 as a retainer and agreed with Averill that he would work on an hourly basis. Carvell initially assembled the necessary information to undertake the representation, prepared and filed a response to the petition and a motion for temporary orders, filed a notice to set the temporary orders hearing, and represented his client at the temporary orders hearing. No evidence was presented from which either Carvell's billing rate or the amount of time expended by him may be determined.[2] Absent such evidence, the PDJ and Hearing Board cannot conclude by a clear and convincing standard that the tasks Carvell undertook were either unnecessary or unreasonable nor that either the hourly or total fee charged were not in accord with those customarily charged for similar legal services. The alleged violation of Colo. RPC 1.5(a) in claim two of the Complaint is therefore dismissed.

Claim four charged a violation of Colo. RPC 1.16(d). Claim four alleged:

The respondent essentially abandoned his client. The respondent left his office and never informed his client where his new office was. The respondent also failed to appear and take steps to protect his client's interests after he unilaterally terminated their relationship.

Colo. RPC 1.16(d) provides in part:

Declining or Terminating Representation:

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned.

█ Having concluded that Carvell abandoned his client—a form of termination of the attorney-client relationship—Colo. RPC 1.16(d) becomes applicable. *See Hotle*, at 187, 29 Colo. Law. at 108. Carvell gave no notice to his client of the termination of the attorney-client relationship and, consequently, failed to afford the client any time to employ replacement counsel. Failing to do either constitutes a violation of Colo. RPC 1.16(d).

Carvell was provided with a request for investigation in this matter on December 15, 1998 but never filed a response. He has failed to participate in these proceedings. His failure to respond to a request for investigation and his failure to participate in these proceedings constitutes grounds for discipline pursuant to C.R.C.P. 251.5(d) and its predecessor, C.R.C.P. 241.6(7).

### III. SANCTIONS/IMPOSITION OF DISCIPLINE

The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards* ") is the guiding authority for selecting the appropriate sanction to impose for lawyer misconduct.

ABA *Standard* 4.41 provides that disbarment is generally appropriate when:

2. Averill never received a statement or refund from Carvell.

(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

ABA *Standard* 4.42 provides in part that suspension is generally appropriate when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client.

 In the present case, Carvell abandoned one client. Carvell's abandonment of Averill deprived the client of his opportunity to have a meaningful final orders hearing. Such misconduct exposed the client to potentially serious harm.[3] There is no allegation that Carvell misappropriated funds. Under the ABA *Standards* and Colorado case law, an attorney's abandonment of clients warrants a sanction ranging from suspension to disbarment, depending on the facts of each case. In *People v. Odom*, 914 P.2d 342 (Colo. 1996), the attorney was suspended for three years for failing to keep one client informed regarding an offer by the estranged spouse to increase child support and failing to keep the client informed regarding social security benefits, misconduct which resulted in harm to the client. In a separate matter, the attorney failed to perform requested services in a criminal matter, failed to refund a retainer, and abandoned the client. The attorney failed to participate in the disciplinary proceedings. In arriving at a three-year suspension, the court stated:

> Prior case law would sustain either a long period of suspension or disbarment in his case. However, "[g]iven the abbreviated record in these default proceedings, and the facts and circumstances of this particular case, we elect to follow the recommendations of the hearing panel and impose a period of suspension rather than disbarment." 914 P.2d at 345 (*quoting People v. Crimaldi*, 854 P.2d 782, 786 (Colo.1993)).

In assessing a three year sanction, the court in *Odom* considered the attorney's prior discipline as an aggravating factor. *Id.* at 345. In *People v. Rishel*, 956 P.2d 542 (Colo. 1998) the Colorado Supreme Court suspended the attorney for one year and one day for

seriously neglecting two client matters in a manner similar to the misconduct regarding the one client in this matter, and recommended special conditions for reinstatement. In both *Odom* and *Rishel*, the court expressed reluctance to disbar the attorney based on the abbreviated record and minimal evidence presented in the default proceedings.

Carvell chose not to participate in these proceedings and did not appear at the hearing; therefore, the PDJ and Hearing Board did not have the benefit of Carvell's presentation of factors which might mitigate the sanction. However, the People informed the PDJ and Hearing Board that Carvell had no prior discipline in over thirty years of practice. Lack of prior discipline is a mitigating factor. *See* ABA *Standards*, 9.32(a).

The PDJ and Hearing Board considered certain factors in aggravation pursuant to ABA *Standards* 9.22. Carvell committed multiple offenses, *see* 9.22(d); Carvell engaged in bad faith obstruction of the disciplinary proceeding by failing to respond to the request for investigation and by refusing to participate in these proceedings; *see* 9.22(e), Carvell failed to acknowledge his misconduct, *see* 9.22(g), and Carvell had substantial experience—thirty years—in the practice of law. *See* 9.22(i).

The PDJ and Hearing Board find that in the present case, where the respondent's conduct constituted the abandonment of a single client but in which there was no allegation or finding of the misappropriation of funds, a suspension rather than disbarment is warranted. A suspension of one year and one day will require that Carvell undergo reinstatement proceedings. As a condition of reinstatement, Carvell shall be required to pay restitution to Averill for the funds Averill expended hiring another attorney to attempt to undo the harm Carvell's misconduct inflicted upon him.

#### IV. ORDER

It is therefore ORDERED:

---

3. Absent a complete review of the evidence in the underlying dissolution case, the PDJ and Hearing Board cannot conclude that the client actually suffered serious harm as a result of the abandonment.

1. Robert A. Carvell, Registration Number 03576 Is Suspended From The Practice Of Law Effective Thirty-One Days From The Date Of This Order For A Period Of One Year And One Day.

2. Prior to the submission of any Petition for Reinstatement pursuant to C.R.C.P. 251.29, Carvell shall pay to Patrick Averill the sum of $2,000 plus statutory interest from October 30, 1998.

3. Carvell is Ordered to pay the costs of these proceedings; the People shall submit a Statement of Costs within ten (10) days of the date of this Order. Respondent shall have five (5) days thereafter to submit a response thereto.