**The PEOPLE of the State of Colorado, Complainant,**

**v.**

**Norman Craig POLL, Respondent.**

**No. 02PDJ027.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Feb. 24, 2003.

Opinion by a Hearing Board consisting of the Presiding Disciplinary Judge, ROGER L. KEITHLEY, and Hearing Board Members DAVID S. WAHL, M.D. a member of the public, and MARY WEISS, a member of the bar.

## REPORT, DECISION AND IMPOSITION OF SANCTION

### SANCTION IMPOSED: ATTORNEY DISBARRED

A Sanctions Hearing pursuant to C.R.C.P. 251.15(b) was held on October 17, 2002, before a Hearing Board consisting of the Presiding Disciplinary Judge ("PDJ") and two Hearing Board Members, David ·S. Wahl, M.D., a representative of the public, and Mary Weiss, a member of the bar. Kim E. Ikeler, Assistant Regulation Counsel, represented the People of the State of Colorado (the "People"). Norman Craig Poll ("Poll"), the respondent, did not appear either in person or by counsel.

The People filed a Complaint in this matter on April 29, 2002. The Citation and Complaint were sent via regular and certified mail to Poll on the same date. The People filed a Proof (Attempted Service) on June 5, 2002. The Proof (Attempted Service) indicates that the Citation and the Complaint were sent to both Poll's registered business address and his registered home address, but were returned undelivered to the Office of Attorney Regulation Counsel. Poll failed to file an Answer or otherwise respond to the Complaint.

On June 26, 2002 the People moved for default on the claims set forth in the Complaint. Copies of the Motion for Default were sent to Poll at both his business and home addresses. Poll did not file a response to the People's Motion for Default.

On July 16, 2002, the PDJ granted the Motion as to the facts set forth in the Complaint, which were deemed admitted, and as to the claims set forth in the Complaint, which were deemed established. Copies of the PDJ's order granting default were sent to Poll at his business and home addresses.

On August 1, 2002, the People sent a Confirmation of Sanctions Hearing to Poll via certified and regular mail at his business and home addresses. The Confirmation provided notice that the sanctions hearing was scheduled for October 17, 2002.

On October 17, 2002, the PDJ received a Motion for Continuance from Poll requesting that the Sanctions Hearing scheduled for the same day be continued. After consulting with the Hearing Board members, the PDJ denied Poll's request on the ground that the relief was not requested on a timely basis. Further, Poll did not sign the pleading, and it was not properly filed with the Office of the PDJ; rather, it was provided to the Office of Attorney Regulation Counsel and a copy was submitted to the PDJ by that office.

The Hearing Board commenced the Sanctions Hearing as scheduled. During the course of the Sanctions Hearing commencing on October 17, 2002, it was brought to the Hearing Board's attention that Poll had been placed on Disability Inactive Status by Order of the PDJ on December 3, 2001, in case No. 02PDJ077. Accordingly, the PDJ, in order to ensure that Poll was not prevented from participating in the disciplinary proceeding due to his disability, continued the Sanctions Hearing to November 14, 2002.

Shortly before the November 14, 2002 continued hearing, the PDJ received a letter from Poll stating in part that he was unable to attend the sanctions hearing scheduled for November 14 and setting forth the reasons for such inability. Based on Poll's letter, the PDJ, after conferring with the Hearing Board, determined that a second continuance was warranted, in order to provide Poll with every opportunity to present factors in mitigation and argument on the appropriate sanction. By Order dated November 15,

2002, the PDJ ordered Poll to confirm in writing prior to December 12, 2002 whether he intended to appear on that date to participate in the Sanctions Hearing. The order advised Poll that his failure to appear would result in the Hearing Board considering the evidence previously presented and making findings of fact and conclusions of law based on that evidence alone. Poll failed to provide written notice of his intent to appear, and did not appear on December 12, 2002, for the Sanctions Hearing.

The PDJ vacated the December 12, 2002 Sanctions Hearing, and the Hearing Board rendered its decision based upon the evidence previously presented, including the testimony from the People's witnesses K. David Rice, Jr., Norman Haglund and William Brittan, the People's exhibits 1 and 2 which were offered and admitted into evidence, the facts established by the entry of default, and the People's argument. The Hearing Board made the following findings of fact which were established by clear and convincing evidence.

## I. FINDINGS OF FACT

Poll has taken and subscribed the oath of admission, was admitted to the bar of the Colorado Supreme Court on October 19, 1982 and is registered upon the official records of the Supreme Court, registration number 12478. He is subject to the jurisdiction of this Court pursuant to C.R.C.P. 251.1(b). Poll was placed on disability inactive status on December 4, 2001.

All factual allegations set forth in the Complaint were deemed admitted by the entry of default, and therefore are established by clear and convincing evidence. *See* Complaint attached hereto as exhibit "A."

## II. CONCLUSIONS OF LAW AND IMPOSITION OF SANCTION

■ The entry of default established the following violations of the Colorado Rules of Professional Conduct ("Colo.RPC") in the within action: Colo. RPC 1.3(an attorney shall act with reasonable diligence and promptness in representing a client and shall not neglect a client's legal matter) in claim one; Colo. RPC 1.4(a)(an attorney shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information) and Colo. RPC 1.4(b)(an attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation) in claim two; Colo. RPC 8.4(c)(it is professional misconduct for an attorney to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation) in claim three; Colo. RPC 3.3(a)(an attorney shall not knowingly make a false statement of material fact or law to a tribunal) in claim four, and Colo. RPC 1.16(d) (an attorney shall, upon termination of representation, take steps to the extent reasonably practicable to protect a client's interests, including giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of any fee not earned) in claim five.

Poll represented certain defendants consisting of a developer, David Rice, Jr. ("the client representative"), and certain entities associated with him in an action styled *Jerry W. Rowe, et al. v. West Nebraska Development, Inc., et al.,* Grand County District Court, Case No. 98CV111 ("the litigation"). Poll failed to forward to the defendants' representative written discovery, failed to respond to the discovery, failed to respond to a motion to compel, failed to timely respond to a court order compelling responses to the discovery, and failed to meet a court-ordered deadline for the filing of responses to the discovery. As a result of Poll's acts and omissions, the court dismissed the defendant clients' counterclaims and defenses and struck the defendant clients' Answer. Thereafter, Poll failed to prepare or appear for trial. The court entered judgment against Poll's clients and granted certain equitable relief and attorneys fees. Poll's acts and omissions constituted a violation of Colo. RPC 1.3.

Poll did not advise his clients in a timely manner that he had received discovery requests or advise them of the deadline to serve responses. He failed to inform his

clients that a motion to compel had been filed and that the court had issued an order compelling the clients' responses. He failed to inform the clients of the trial court's striking the clients' counterclaims and answer, and he failed to provide the clients with a copy of the court's order entering sanctions. Additionally, he failed to advise his clients that a trial had been set on damages, that he had not appeared at the trial on damages, and that judgment had entered against them. Poll's acts and omissions constituted a violation of Colo. RPC 1.4(a) and Colo. RPC 1.4(b).

Poll knowingly engaged in dishonesty, deceit, fraud and misrepresentation in violation of Colo. RPC 8.4(c) during his representation of the clients in the litigation. Poll knowingly deceived the client representative by falsely telling him that the trial court's order entering sanctions against the clients could be appealed and that, if the appeal were unsuccessful, the counterclaims could be filed in a different county. Poll misled the client representative by telling him that, if an appeal were filed, it would stay further proceedings in the trial court until the appellate court decided the appeal. Poll further deceived the client representative by telling him that Poll had filed an appeal and that matters were stayed in the trial court when in fact, the trial court had set the matter for a trial on damages.

Poll knowingly made false statements of material fact to the trial court by falsely implying that the delay in responding to discovery was caused by the clients, and by telling the court that he was having difficulty locating the client representative. By these acts and omissions Poll violated Colo. RPC 3.3(a).

■ Poll effectively abandoned representation of his clients and thereafter failed to take steps to protect the clients' interest. To establish abandonment rather than merely neglect, there must be proof that the attorney—during a given time period—was required to accomplish specific professional tasks for the client, failed to accomplish those tasks, and failed to communicate with the client. *People v. Carvell*, 62 P.3d 167, 2000 Colo. Discipl. LEXIS 26 (Colo.O.P.D.J.2000).

The proof must objectively indicate that the attorney has deserted, rejected and/or relinquished the professional responsibilities owed to the client. *Id.* The totality of facts establish that Poll deserted, rejected and/or relinquished the professional responsibilities he owed to the clients and thereby abandoned them. Poll failed to give reasonable notice to the clients of his abandonment and failed to do so within sufficient time for the clients to obtain other counsel. Following the trial court's entry of its order striking the clients' counterclaims and Answer, Poll did almost no work on the case. He made little or no effort to prepare for trial and failed to attend trial. By his acts and omissions, Poll abandoned his clients, with the result that default judgment was entered against them. Poll's acts and omissions constituted a violation of Colo. RPC 1.16(d).

### III. IMPOSITION OF SANCTION

■ Absent significant mitigating factors, case law in Colorado establishes that the appropriate sanction for an attorney's material misrepresentations to a tribunal is disbarment. *See People v. Roose*, 44 P.3d 266, 271 (Colo.O.P.D.J.2002) (attorney disbarred for having filed a notice of appeal representing herself as the attorney for a mother in a dependency and neglect proceeding, when the attorney knew the trial judge had removed her from further representation of the mother); *People v. Espinoza*, 35 P.3d 552, 559 (Colo.O.P.D.J.2001)(attorney disbarred for affirmatively misrepresenting to the court in support of her effort to withdraw that she was not able to contact her client); *People v. Kolbjornsen*, 35 P.3d 181, 184 (Colo.O.P.D.J.1999)(attorney disbarred for having significantly understated his income and financial assets on his income tax returns and bankruptcy schedules in the course of a bankruptcy proceeding). Similarly, Poll's making material misrepresentations to his clients in the course of the litigation warrants disbarment.

Additionally, Poll's neglect of the clients' matter rising to the level of abandonment confirms that disbarment is warranted. *See People v. Ain*, 35 P.3d 734, 739 (Colo.O.P.D.J.2001)(attorney disbarred for

abandonment of a client matter in addition to other rule violations); *People v. Barbieri*, 61 P.3d 488, 491, 2000 Colo. Discipl. LEXIS 6, *7(Colo.O.P.D.J.2000)(attorney disbarred for, among other rule violations, failing to forward outstanding discovery requests to the client and failing to respond to motions filed by the opposing party); *People v. Post*, 2000 Colo. Discipl. LEXIS 80, *28, 32 (Colo. O.P.D.J. May 15, 2000)(disbarring attorney for an extensive pattern of neglect, including failure to serve interrogatory responses on opposing counsel until after opposing counsel had filed a motion to compel and failure to appear for trial).

The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards* ") is the guiding authority for selecting the appropriate sanction to impose for lawyer misconduct. ABA *Standard* 4.41(b) provides that disbarment is generally appropriate when "a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client." ABA *Standard* 4.41(c) provides that disbarment is generally appropriate when "a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client."

ABA *Standard* 4.61 further provides that "[d]isbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potentially serious injury to a client." Finally, ABA *Standard* 6.61 provides that "[d]isbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party. . . ."

Pursuant to ABA *Standards* 9.22 to 9.32 respectively, the Hearing Board considered aggravating and mitigating factors in arriving at the appropriate sanction. Since Poll did not participate in these proceedings, no mitigating factors were established. The facts deemed admitted in the Complaint established the following aggravating factors pursuant to ABA *Standard* 9.22. Poll re-ceived prior discipline, an aggravating factor under ABA *Standard* 9.22(a). In 1992, Poll received a Letter of Admonition for having attempted to withdraw from a matter shortly before trial and, without attempting to ascertain whether the motion had been granted, failed to appear at trial. Poll evidenced a dishonest or selfish motive, *see id.* at 9.22(b); he engaged in bad faith obstruction of the disciplinary proceeding by failing to participate in the proceeding and comply with the rules or orders of the disciplinary agency, *see id.* at 9.22(e); Poll demonstrated indifference to making restitution, *see id.* at 9.22(j), and at the time of the misconduct at issue he had substantial experience in the practice of law, having been admitted to the bar in 1982, *see id.* at 9.22(i).

Based upon the analysis set forth above and absent any mitigating factors disbarment is warranted for the conduct giving rise to this proceeding.

## IV. ORDER

It is therefore ORDERED:

1. NORMAN CRAIG POLL, attorney registration 12478, is DISBARRED from the practice of law effective thirty—one days from the date of this order, and his name shall be stricken from the roll of attorneys licensed to practice law in the State of Colorado.

2. Poll is Ordered to pay the costs of these proceedings; the People shall submit a Statement of Costs within ten (10) days of the date of this Order. Poll shall have five (5) days thereafter to submit a response thereto.

### EXHIBIT A

### COMPLAINT

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.9 through 251.14, and it is alleged as follows:

1. The respondent has taken and subscribed the oath of admission, was admitted to the bar of this Court on October 19, 1982, and is registered upon the official records of this Court, registration No. 12478. He is subject to the jurisdiction of this Court in

these disciplinary proceedings. The respondent's registered business address is 3333 S. Bannock Street, Suite 888, Englewood, Colorado 80110.[1]

2. Respondent was placed on disability inactive status on December 4, 2001.

## CLAIM I

### [Failing to act with reasonable diligence and promptness in representing a client, and neglect of legal matter-Colo. RPC 1.3]

3. Rule 1.3, Colorado Rules of Professional Conduct, provides:

*II. A lawyer shall act with reasonable diligence in representing a client. A lawyer shall not neglect a legal matter entrusted to that lawyer.*

4. Respondent failed to act with reasonable diligence and neglected matters entrusted to him during his representation of the defendants in an action styled *Jerry W. Rowe, et al. v. West Nebraska Development, Inc., et al.,* Grand County District Court, Case No. 98CV111 ("the litigation"). In that case, respondent represented defendants West Nebraska Development, Inc., Pacific Summits Engineering, Ltd., David K. Rice Jr., individually, and CAMB, a Colorado partnership (collectively the "defendants" or the "clients"). The facts are as follows.

5. Respondent took on representation of the defendants in the litigation in 1999. Respondent communicated with his clients through defendant David K. Rice ("Rice").

6. During the course of the litigation, the plaintiffs in the case propounded written discovery. Respondent received the discovery through the mail in mid-May 2000. However, respondent failed to advise his clients that he had received the discovery requests and failed to forward the discovery requests to his clients.

7. The deadline for responding to plaintiffs' discovery requests was June 19, 2000.

Respondent was aware of this deadline. Despite the passage of more than one month, respondent failed to forward plaintiffs' discovery requests to his clients by that deadline. As a result, respondent did not file discovery responses on behalf of the defendant/clients by the June 19, 2000 deadline.

8. Thereafter, Plaintiffs' counsel reminded respondent several times orally and in writing that discovery responses were due. Respondent promised to provide discovery responses, but failed to do so. Respondent failed again to forward the discovery requests to the clients.

9. In early July, 2000, respondent received from plaintiffs a motion to compel discovery responses ("motion to compel"). Respondent failed to respond to the motion to compel, did not inform the clients that the motion to compel had been filed, and failed to inform his clients that discovery requests had been propounded and remained outstanding.

10. In early August, 2000 the trial judge in the litigation conferred with counsel by telephone concerning the motion to compel. During the conference, the court advised counsel that the court would impose sanctions on any party that failed to timely comply with discovery requirements. After discussion with counsel, the court issued an order compelling respondent's clients to respond to the outstanding discovery on or before August 11, 2000 and that the responses be complete and objection-free. The court also awarded attorney's fees to plaintiffs.

11. After this conference, respondent finally forwarded draft discovery responses to the clients, by sending the draft to Rice. Respondent requested that the clients review the responses and comment within the next few days. Rice promptly delivered comments on the draft discovery responses to respondent's office. Rice did so by August 10, 2000, within the time allotted by the court for defendants' service of their discovery responses. Respondent still failed to finalize

---

1. Mr. Poll's present residence address appears to be 5100 Leetsdale Drive, # 243, Denver, Colorado 80246.

and serve complete discovery responses within the time ordered by the court.[2]

12. On August 11, 2000, respondent filed a motion for extension of time to respond to plaintiffs' discovery. In the motion, respondent implied that the delay was caused by some confusion or misunderstanding on Rice's part, or that a medical or family emergency had occurred. Plaintiffs quickly objected, and requested the court to impose the harshest of sanctions—dismissal—on defendants for their failure to respond to discovery.

13. On the morning of August 15, 2000, Rice came to respondent's office. Respondent still had not prepared or revised Rice's drafts of answers to the plaintiffs' interrogatories, which drafts Rice had provided to respondent on August 10, 2000. Respondent had no documents prepared for Rice to sign. Respondent further did not advise Rice of the circumstances concerning the delinquency of the defendants' responses to the plaintiffs' discovery requests, of the court's order to compel discovery, or the fact that answers to interrogatories had not been submitted on or before August 11, 2000, in compliance with the court's order to compel discovery.

14. On August 22, 2000, the court held a second telephone hearing concerning defendants' failure to respond to discovery. After discussion with counsel, the judge struck the defendants' counterclaims and Answer. The court advised respondent that, if complete and objection-free responses to the discovery were provided by the close of business on the following day, the court would entertain a motion for reconsideration of the sanctions.

15. Respondent failed to inform the clients of the importance of filing complete and objection-free discovery responses by the close of business on August 23, 2000 as a possible means to modify the court's order. However, on August 23, 2000, respondent did serve answers to the interrogatories propounded by plaintiffs. Respondent also filed a motion of reconsideration of the court's

order imposing sanctions. In that motion, respondent continued to represent that defendants' failure to comply with the court's order compelling discovery was due to Rice's mistake and misunderstanding.

16. On or about September 7, 2000, the court entered an order making specific findings concerning Rice's dilatory behavior and striking defendants' counterclaims and answer, *nunc pro tunc* August 22, 2000. Upon reviewing this order, respondent was aware that the court had ascribed personal responsibility to Rice for failure to comply with the plaintiffs' discovery requests and the court's order compelling discovery responses. Respondent took no steps to advise the court that the responsibility for the delays in discovery in this matter were the respondent's alone, and that Rice was not aware that the discovery was delinquent or that an order compelling discovery had been entered.

17. Instead, respondent advised Rice that the court had entered a "default" against defendants because of discovery problems. Respondent advised Rice that the court had dismissed the defendants' counterclaims, but did not advise Rice that the court had also stricken the defendants' answers, leaving defendants unable to defend themselves further on liability issues.

18. Respondent advised Rice that the trial court's September 7, 2000 order could be appealed. Respondent further advised Rice that if an appeal were filed, it would have the effect of staying further proceedings in the trial court until the appeal was decided. Rice instructed respondent to promptly file an appeal. Respondent told Rice that he would do so.

19. On September 29, 2000, the court held a telephone conference to schedule a trial concerning damages. The trial was set for late February, 2001. Respondent failed to inform his clients that trial had been set.

20. On several occasions over the next several months, respondent informed Rice that respondent had filed an appeal with the Colorado Court of Appeals and that matters

---

**2.** Apparently, respondent did serve responses to requests for admissions by mail on August 11th. In addition he produced some documents on that date. However, he failed to respond to plaintiffs' interrogatories.

were stayed in the trial court while that appeal was pending. In fact, respondent had not filed such an appeal.

21. In mid-February, 2001, respondent filed a motion to continue the trial on damages, based on respondent's personal health problems. One week later, respondent participated in telephone conference with the court and opposing counsel, at which time the court granted respondent's motion to continue the trial and rescheduled it for late March, 2001.

22. Respondent did not inform Rice that the trial had been moved to late March, 2001. Instead, respondent continued to advise Rice that the matter was pending in the Colorado Court of Appeals and that proceedings in the trial court were stayed.

23. Upon information and belief, respondent failed to prepare for trial. Instead, on March 20, 2001, respondent filed a notice of appeal with the Colorado Court of Appeals.[3] Respondent did not contact the trial court to determine whether, in light of his filing the notice of appeal, the trial court had stayed proceedings. Nor did respondent inform Rice that respondent was not planning to attend the trial.

24. A trial on damages took place in Grand County District Court commencing on March 27, 2001. Respondent failed to appear or attend the trial. He also failed to advise the clients of the trial.

25. Following trial, the court entered judgment against the defendants, respondent's clients, in amounts ranging in approximate amounts of from $800,000 to $3,000,000, plus certain equitable relief and attorneys fees. Respondent failed to inform his clients of the judgment.

26. Subsequently, the clients learned of the judgment as a result of liens recorded against real estate they owned. The clients hired substitute counsel, who filed motions for relief from the judgment pursuant to C.R.C.P. 60(b).

27. The case was ultimately settled. However, successor counsel estimates that the cost to the defendants to repair the con-

sequences of respondent's neglect could be over $100,000. These damages may go uncompensated, since respondent did not have malpractice insurance.

28. As is demonstrated by the foregoing, respondent knowingly or negligently failed to act with reasonable diligence and promptness in representing the defendants in the litigation. Instead, he knowingly or negligently neglected *inter alia* to respond to the plaintiffs' discovery requests and to prepare for and attend trial. As a result of his knowing or negligent neglect, the clients were seriously harmed. Based on the foregoing, respondent should be subjected to discipline, as provided in C.R.C.P. 251.5, for violation of Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

## *CLAIM II*

### [Failing to communicate with clients concerning the status of the litigation-Colo. RPC 1.4(a) and (b) ]

29. Paragraphs 1 through 28 are incorporated herein.

30. Rule 1.4(a), Colorado Rules of Professional Conduct, provides: "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

31. Rule 1.4(b), Colorado Rules of Professional Conduct, provides: "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding representation."

32. Respondent failed to keep the defendants/clients reasonably informed about the status of the litigation and failed to comply with reasonable requests from Rice for information about the litigation. Respondent also failed to explain to Rice or any of the other defendants/clients the events which had transpired in the litigation to the extent necessary to permit the clients to make informed decisions about respondent's representation of them. The facts are as follows.

33. As discussed above, in mid-May 2000, the plaintiffs in the litigation propounded

---

**3.** That appeal was ultimately dismissed.

written discovery to the defendants, respondent's clients. Respondent received the discovery requests in the mail. However, he did not advise his clients of the discovery requests nor did he forward copies of the discovery requests to the clients.

34. Defendants' responses to the discovery requests were due in mid-June, 2000. Respondent was aware of this deadline, but failed to inform his clients of it.

35. After the deadline had passed, plaintiffs' counsel reminded respondent several times that the responses were due. Despite these reminders, and the respondent's promises to plaintiffs counsel that he would provide written discovery responses, respondent failed to inform the clients of the outstanding discovery requests or that responses were overdue.

36. In early July, 2000, respondent received from plaintiffs the motion to compel. Respondent failed to inform his clients that the motion had been filed. Nor did respondent inform Rice or his other clients that discovery had been propounded and was outstanding. Respondent further failed to forward the discovery requests to Rice for his consideration and assistance. Respondent also failed to explain to the clients the sanctions which might be entered based on the motion to compel.

37. In early August, 2000, respondent participated in a telephone conference with the trial court and counsel for the plaintiffs. The trial court issued an order compelling the defendants to respond to the outstanding discovery, and awarding attorneys fees to the plaintiffs. Respondent failed to inform the clients of the order or the circumstances which had led to the court entering that order. Respondent further failed to inform Rice or his other clients that discovery had been served upon respondent in mid-May, that the discovery responses were delinquent, and that it was respondent's delay which had caused a problem.

38. Although the respondent did prepare draft discovery responses after the trial court entered its order and sent those to Rice, respondent failed to explain to Rice or the other defendants the deadline set by the court or the reasons for the court's order. Respondent further failed to explain to the clients the damage to their case which could result from failure to comply with the court's order.

39. On August 10, 2000, Rice brought his comments to the draft discovery responses to respondent's office. Rice asked respondent if it was necessary for Rice to sign anything that day. Respondent told Rice "no". Rice informed respondent that he was leaving town the next day for a weekend trip and would not be available until August 15. Respondent failed to advise Rice that, pursuant to trial court's order, complete and objection-free responses to the plaintiffs' interrogatories were due the next day, August 11, 2000. Respondent further failed to advise Rice of the consequences of not meeting that deadline.

40. On August 15, 2000, Rice again visited respondent's office. Respondent still had not finalized the interrogatory answers by incorporating Rice's comments, which comments Rice had provided to respondent on August 10. As a result, respondent had no documents prepared for Rice to sign. Respondent failed to advise Rice of the circumstances concerning the delinquency of the discovery responses, of the trial court's order to compel discovery or of the fact that interrogatory answers had not been submitted by August 11, 2000 in compliance with the trial court's order to compel discovery. Respondent also did not advise Rice of the consequences which might arise from that failure.

41. As discussed above, on August 22, 2000, respondent participated in a second telephone conference with the trial judge and plaintiffs' counsel. At the close of the telephone conference, the judge struck the defendants' counterclaims and answer. However, the trial court stated that, if complete and objection-free responses were served by the close of business on the following day, the court would entertain a motion for reconsideration. Respondent failed to inform his clients of the court's action in striking the counterclaim and answer and of the need to avoid the sanctions imposed by the court.

42. As discussed above, the judge entered on September 7, 2000, *nunc pro tunc,* August 22, 2000, a written order making findings concerning defendants' dilatory behavior and striking defendants' counterclaims and answer. Respondent failed to inform Rice or the other clients of this order. Despite receiving and reviewing the order, respondent took no steps to advise defendants that respondent—not defendants—was responsible for the delays in responding to plaintiffs' written discovery requests.

43. Rather, respondent advised Rice, the defendants' representative, that the court had entered a "default" against defendants because of discovery problems. Respondent told Rice that the court had dismissed defendants' counterclaims. But, respondent did not advise Rice that the court also had stricken defendants' answer, leaving defendants without a defense as to liability. Respondent did not provide Rice with a copy of the court's September 7, 2000 order. Nor did respondent advise Rice that the trial judge had made comments concerning Rice personally in the order and that the judge had entered sanctions against defendants based on the judge's misunderstanding that Rice—rather than respondent—was to blame for the delay in answering plaintiffs' discovery.

44. Rather than make these disclosures, respondent actively misled Rice concerning the court's September 7, 2000 order. Respondent advised Rice that the judge's actions could be appealed through an interlocutory procedure. Respondent also advised Rice that, if an appeal were unsuccessful, the counterclaims could be refiled in a different county. Respondent further advised Rice that, if an appeal were filed, it would have the effect of staying further proceedings in the district court until the appeal was decided by the appellate court. Misled by respondent's statements, Rice instructed respondent to promptly file an appeal. Respondent told Rice he would do so.

45. In late September, 2000, the court held a telephone conference with counsel to schedule a trial concerning damages. Respondent failed to advise his clients that a trial had been set. Instead, respondent mis-informed Rice concerning the status of the case.

46. On several occasions over the next several months, respondent informed Rice that an appeal had been filed in the Colorado Court of Appeals and that matters were stayed in the trial court while that appeal was pending. In fact, respondent had not filed such an appeal.

47. On or about February 14, 2001, respondent filed a motion for continuance in the litigation. Respondent requested a continuance of the trial concerning damages because of respondent's personal health problems. One week after respondent filed his motion for continuance, the court held a telephone conference, at which time the court granted respondent's motion and rescheduled the trial for late March, 2001.

48. Respondent did not inform Rice or the other defendants that he had moved for a continuance, that the court had granted the continuance, or that the trial had been rescheduled to late March, 2001. Instead, respondent continued to advise Rice that the matter was pending in the Colorado Court of Appeals and that proceedings in the trial court were stayed.

49. In early March, 2001, Rice came to respondents' office to inquire what was going on in the case. Respondent again informed Rice that respondent had filed an appeal and that all proceedings in the district court were stayed. Respondent told Rice that no trial would take place until the Court of Appeals had ruled on the pending appeal.

50. On March 20, 2001, respondent filed a notice of appeal in the Colorado Court of Appeals pertaining to the litigation. Respondent did not provide Rice or the other defendants with copies of the appeal papers.

51. Upon information and belief, respondent did not plan on attending the trial on damages. Respondent did not communicate this fact to his clients or advise his clients of the consequences which could result from the defendants' failing to appear at trial.

52. As discussed above, a trial on damages took place in Grand County District Court commencing on March 27, 2001. Not only did respondent fail to attend trial, he

failed to advise any of his clients of the trial. The trial resulted in a judgment against respondents' clients in amounts ranging from approximately $800,000 to $3,000,000.

53. In early April, 2001, Rice appeared at respondent's office. Rice showed respondent copies of transcripts of judgment entered in the litigation and filed in the land records. Rice asked respondent what was going on. Respondent told Rice that he "did not know" and "would have to look into it".

54. On April 13, 2001, respondent finally acknowledged to Rice that respondent had failed to keep him informed and had misled him about respondent's handling of the litigation, about the court's actions in the case, and about respondent's filing an appeal.

55. Although the case was subsequently settled (due to the efforts of successor counsel), the clients were seriously harmed by the respondent's failure to communicate with his clients concerning the status of the litigation.

56. As is shown by the foregoing, respondent knowingly or negligently repeatedly failed to communicate with his clients concerning the status of the litigation. Respondent knowingly or negligently failed to communicate *inter alia* the need to respond to discovery, the trial court's orders concerning discovery responses, the court's sanctions, and the fact a trial on damages had been scheduled. Respondent also failed to explain the consequences which might result from these developments. Respondent's knowing or negligent failure to communicate and advise concerning these matters led to the loss of defendant's counterclaims and defenses and other serious harm. As a result, respondent should be subjected to discipline, as provided by C.R.C.P. 251.5, for violation of Colo. RPC 1.4(a) and 1.4(b).

Wherefore, the complainant prays at the conclusion hereof.

## Claim III

[**Engaging in conduct involving dishonesty, deceit, fraud or misrepresentation, both to the Court and to the clients-Colo. RPC 8.4(c)** ]

57. Paragraphs 1 through 56 are incorporated herein.

58. Rule 8.4(c), Colorado Rules of Professional Conduct, provides that it is professional misconduct for a lawyer to "[e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation."

59. Respondent knowingly engaged in dishonesty, fraud, deceit and misrepresentation during his representation of the defendants/clients in the litigation. The facts are as follows.

60. As discussed above, during a telephone conference on August 3, 2000 with the trial court concerning defendants' failure to serve discovery responses, respondent knowingly deceived the court when he failed to advise it he had not yet informed his clients of the discovery requests or provided them with draft responses.

61. During the same period, respondent knowingly deceived his clients by not explaining to his clients his delay in preparing discovery responses. Respondent further knowingly deceived his clients by not telling them about the plaintiffs' motion to compel or the court's orders based on that motion and the deadline set by the court.

62. On August 10, and August 15, 2000, Rice came to respondent's office to assist respondent with preparing discovery responses. Respondent knowingly misled or deceived Rice when he did not advise Rice of the circumstances concerning respondent's continuing delinquency in preparing discovery responses, the court's order to compel discovery, or the fact that the discovery responses had not been submitted in compliance with the court's order to compel discovery.

63. On August 11, 2000, respondent served by mail and filed a motion for enlargement of time to respond to discovery. In that motion, respondent falsely implied that the delay in providing discovery responses was due to some confusion or misunderstanding on Rice's part, or that a medical or family emergency had occurred. Respondent did not inform the court of the true facts, to wit, that Rice had informed respondent that Rice would be unavailable from August 11 through 14 and that respondent

had not told Rice of the urgency of responding to the discovery requests or of the reason for that urgency.

64. On August 22, respondent participated in the second telephone hearing before the trial court. Respondent acknowledged to the court that no discovery responses had been served by the court's deadline of August 11, 2000. However, respondent knowingly misled the court by telling the court respondent had had difficulty in locating Rice. Respondent did not advise the court that Rice was unaware of the delinquency of the discovery, that Rice was unaware of an order to compel discovery, and that Rice was unaware the deadline to provide discovery had been set by the court at August 11, 2000. Nor did respondent advise the court that Rice had twice appeared at respondent's office to aid in preparing discovery responses.

65. At the August 22, 2000 hearing, the court struck defendant's counterclaims and answer, effectively leaving defendants without the ability to defend themselves in the case. The court further advised respondent that, if complete and objection-free responses to the discovery requests were provided by the close of business on the following day, the court would entertain a motion for reconsideration of its sanctions.

66. Notwithstanding the obvious urgency of doing so, respondent continued to deceive Rice by failing to inform him of the court's sanctions or of the need to file discovery responses by the close of business the next day, as a possible way of obtaining a modification of the sanctions.

67. Instead, respondent served and filed by mail a motion for reconsideration of the court's dismissal of defendants' counterclaim. In that motion, respondent again misrepresented defendants' failure to comply with the court's order compelling discovery as being due to Rice's mistake and misunderstanding. Respondent further falsely stated to the court that respondent was able to communicate for the first time with Rice on August 21, 2000, when in fact Rice had appeared at respondent's office on August 15 and was available the remainder of the week to assist in the preparation of interrogatory answers and Rice had dropped off the draft discovery responses with his comments on August 10, 2000. Respondent further deceived the court by omitting to explain that the discovery delays were in fact due to respondent's defalcation—not Rice's.

68. Following the trial court's entry of its September 7, 2000 order making specific findings about defendants' dilatory behavior and striking defendants' counterclaims and answer, respondent misrepresented the court's order to Rice. Respondent knowingly deceived Rice concerning the extent of the court's sanctions in that respondent failed to advise Rice that, in addition to striking defendants' counterclaims, the court also had stricken defendants' answer.

69. Respondent took no steps to advise Rice or the court that the responsibility for the delays in discovery were respondent's alone. Respondent further failed to inform the court that Rice was not aware that the discovery was delinquent or that an order compelling discovery had been entered. Respondent did not correct the court's misunderstanding that Rice had been slow or uncooperative, as the court portrayed him in its order. All of this constituted knowing dishonesty, fraud, deceit and misrepresentation.

70. Respondent further knowingly deceived Rice by omitting to provide him with a copy of the court's September 7, 2000 order. Nor did respondent advise Rice that the court had made comments concerning Rice personally in the order.

71. Instead, respondent falsely told Rice that the court's order could be appealed. Respondent further falsely told Rice that, if an appeal were unsuccessful, the counterclaims could be filed in a different county. Respondent further misled Rice by telling him that, if an appeal were filed, it would have the effect of staying further proceedings in the district court until the appeal was decided by the appellate court. Rice then instructed respondent to promptly file an appeal and respondent said he would do so.

72. On September 29, 2000, the court held a telephone conference with counsel and

scheduled a trial on damages for late February, 2001.

73. Over the next several months, when Rice inquired about the status of the case, respondent continued to deceive Rice by failing to tell Rice that a trial of damages had been set. Rather, on several occasions respondent falsely told Rice that an appeal had been filed and that matters were stayed in the trial court while the appeal was pending. In particular, respondent made these misrepresentations to Rice on March 9, 2001, during a visit by Rice to respondent's office.

74. On March 20, 2001, respondent filed a notice of appeal in the Colorado Court of Appeals pertaining to the litigation. Respondent continued his deception of Rice by failing to provide Rice or any of the other defendants with copies of the appeal papers.

75. As discussed above, respondent also knowingly failed to disclose to his clients that respondent had moved to continue the trial and that the trial on damages had been rescheduled to commence March 27, 2001. Respondent further knowingly failed to disclose that he had not attended the trial, thereby causing defendants to default, and that the court had entered judgment against the clients in amounts ranging from approximately $800,000 to $3,000,000, plus certain equitable relief and attorneys fees.

76. Rice discovered that judgments had been entered against all defendants in early April, 2001, when transcripts of judgment were recorded against real property owned by some of the defendants. Rice confronted respondent concerning these judgments, but respondent initially continued his deception. Over the next week, Rice gradually uncovered evidence of the undisclosed events which had led to the trial court's entry of judgment. On April 13, 2001, respondent finally acknowledged Rice that he had misled Rice about the court's actions in the case, about the matters involving the delinquent discovery and sanctions entered by the court, about the fact that no appeal had been filed until March 20, 2001, and about other matters.

77. As a result of respondent's dishonesty, fraud, deceit and misrepresentations to his clients, the clients suffered serious harm.

78. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5, and violates Colo. RPC 8.4(c).

Wherefore, the complainant prays at the conclusion hereof.

### Claim IV

### [Knowingly making a false statement of material fact to a tribunal-Colo. RPC 3.3(a) ]

79. Paragraphs 1 through 78 are incorporated herein.

80. Rule 3.3(a)(1) provides: "A lawyer shall not knowingly make a false statement of material fact or law to a tribunal."

81. Respondent knowingly made false statements of material fact to the trial court in the litigation. The facts are as follows.

82. As discussed above, during a telephone conference with the trial court in early August, 2000 concerning defendants' failure to serve discovery responses, respondent knowingly misled the court as to a material fact by failing to advise the court that he had not yet informed his clients of the discovery requests or provided them with draft responses.

83. On August 11, 2000 respondent served by mail and filed a motion for enlargement of time to respond to discovery. In that motion, respondent falsely implied that Rice had been confused or misunderstood the need to complete the discovery requests or that a medical or family emergency had occurred. In fact, Rice had told respondent that he would not be available from August 11 through 14. Respondent misled the court by failing to admit that respondent had not told Rice of the reason for urgency in completing the discovery responses and of the need for Rice to be present in order that answers to interrogatories could be served by the close of business on August 11.

84. On August 22, respondent participated in the second telephone hearing before

the trial court. Respondent acknowledged to the court that no discovery responses had been served by the court's deadline of August 11, 2000. However, respondent knowingly misled the court as to a material fact (the reason for delay) by telling the court respondent had had difficulty in locating Rice. Respondent further misled the court when he did not advise the court that Rice was unaware of the delinquency of the discovery, that Rice was unaware of an order to compel discovery, and that Rice was unaware the deadline to provide discovery had been set by the court at August 11, 2000. Nor did respondent advise the court that Rice had twice appeared at respondent's office to aid in preparing discovery responses.

85. On August 23, 2000, respondent served and filed a motion for reconsideration concerning the trial court's dismissal of the defendants' counterclaims. In that motion, respondent again misrepresented the reasons for the failure of defendants to comply with the court's order compelling discovery. Respondent falsely stated that defendants' delay was due to Rice's mistake and misunderstanding. In addition, respondent falsely stated that respondent was unable to communicate with Rice until August 21, 2000, when in fact Rice had appeared at respondent's office on August 15 and was available for the remainder of the week to assist respondent in finalizing discovery responses, and Rice had dropped off the draft discovery responses with his comments on August 10, 2000. Respondent continued to mislead the court by failing to disclose that the derelictions in responding to discovery were respondent's—no those of Rice.

86. Following the trial court's entry of its September 7, 2000 order making specific findings about defendants' dilatory behavior and striking defendants' counterclaims and answer, respondent took no steps to advise the court that the responsibility for the delays in discovery were respondent's alone. Respondent further failed to inform the court that Rice was not aware that the discovery was delinquent or that an order compelling discovery had been entered. Respondent further failed to correct the court's misun-

derstanding that Rice been slow or uncooperative, as the court portrayed him in its order. In short, respondent continued his deception of the court by failing to disclose the real reasons for defendants' delay.

87. In part as a result of respondent's false statements to the court, the clients suffered serious harm.

88. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5, and violates Colo. RPC 3.3(a).

WHEREFORE, complainant prays at the conclusion hereof.

### Claim V

**[Failing to take steps to protect the clients' interests following abandonment of the case-Colo. RPC 1.16(d) ]**

89. Paragraphs 1 through 88 are incorporated herein.

90. Rule 1.16(d), Colorado Rules of Professional Conduct, provides: "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel...."

91. Respondent effectively abandoned his representation of the defendants/clients and, thereafter, failed to take steps to protect the clients' interest. Respondent failed to give reasonable notice to the clients of the abandonment and failed to do so within sufficient time for the clients to obtain other counsel. The facts are as follows.

92. Following the trial court's entry of its September 7, 2000 order, respondent effectively abandoned his representation of the defendants/clients. Although respondent participated in a telephone conference on September 29, 2000 scheduling a trial on damages, upon information and belief respondent made little or no effort to prepare for trial. Instead, respondent deceived Rice (and thereby the other defendants) by telling Rice that the case was on appeal, that matters in the trial court were stayed, and that therefore no further discovery or trial preparation efforts were necessary. And, as dis-

cussed above, respondent failed to attend trial when it ultimately took place in late March, 2000.

93. Respondent did not inform the defendants/clients that he was abandoning their representation; to the contrary, he actively deceived them into thinking that he was continuing to represent them, by having filed an appeal. Respondent failed to take the steps which were necessary to protect the clients' interests under these circumstances, to wit, by informing the clients that he was abandoning representation and by assisting the clients in obtaining other counsel.

94. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5, and violates Colo. RPC 1.16(d).

95. WHEREFORE, complainant prays at the conclusion hereof.

WHEREFORE, it is prayed that the respondent be found guilty of violations of various rules of the Colorado Rules of Professional Conduct set forth above which establish grounds for discipline as provided in C.R.C.P. 251.5, and that he be appropriately disciplined and assessed the costs of these proceedings.

Kim E. Ikeler, #15590
Assistant Regulation Counsel
John S. Gleason, #15011
Regulation Counsel
**Attorneys for Complainant**